Clyde **MOORE**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 06–06–00140–CR.

Court of Appeals of Texas, Texarkana.

Submitted May 16, 2007.

Decided June 27, 2007.

Craig L. Henry, Texarkana, for appellant.

Adam O. Fellows, Asst. Dist. Atty., Texarkana, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

As if he were a schoolboy lost in a daydream, Clyde Moore's trial counsel sat at the counsel table in the courtroom and, in the words of the trial court's bailiff, "lean[ed] over with his head in his hand" near the end of the State's cross-examination of Moore, at least momentarily failing to respond when it was his turn to question Moore on re-direct examination. Moore now contends that, because his trial counsel was asleep during this critical moment of the trial, we should reverse his conviction and sentence and grant him a new trial.

After reviewing the record, we cannot say the record necessarily demonstrates that Moore's retained trial counsel was asleep during any portion of the trial. Nor do we conclude such alleged conduct affected the outcome of Moore's trial. We, therefore, overrule Moore's claim of ineffective assistance of counsel, and we affirm the trial court's judgment.

### (1) The Standards for Testing Claims of Ineffective Counsel

The Sixth Amendment to our Federal Constitution guarantees the accused in a criminal case the right to counsel. *See* U.S. CONST. amend. VI; *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). Implicit in this constitutional guarantee is the right to a competent and functioning counsel. *Strickland v. Washington*, 466 U.S. 668, 685–86, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Cronic*, 466 U.S. 648, 654, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). If an accused's counsel provides incompetent and ineffective assistance at trial, and if it can be said that such ineffective assistance rises to the level of a due process violation, then such failings undermine our faith in the outcome of the accused's trial. *See Strickland*, 466 U.S. at 685, 104 S.Ct. 2052; *Cronic*, 466 U.S. at 654, 104 S.Ct. 2039.

To prevail on a claim of ineffective assistance, the appellant must demonstrate first "that his trial counsel's conduct was objectively deficient." Ex parte *McFarland*, 163 S.W.3d 743, 753 (Tex.Crim.App. 2005) (citing *Cronic*, 466 U.S. at 658, 104 S.Ct. 2039). "In assessing this, we look to see if counsel was acting as 'a reasonably competent attorney' would under the circumstances." *Id.* (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052). The appellant has the burden of proof on appeal, and he or she "must overcome a 'strong presumption that counsel's performance fell within a wide range of reasonable professional assistance.'" *Id.* (citing *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052). In essence, the appellant must show that the trial attorney made errors that are "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

The appellant must next demonstrate that trial counsel's objectively deficient conduct prejudiced the appellant's trial result. *McFarland,* 163 S.W.3d at 754 (citing *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052). Under this prong of the *Strickland* test, the appellant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. The term "reasonable probability" under *Strickland's* second prong means a "probability sufficient to undermine confidence in the outcome [of the trial]." *Id.* "Absent some effect of the challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." *McFarland,* 163 S.W.3d at 754 (citing *Cronic,* 466 U.S. at 656, 104 S.Ct. 2039).

Generally, unless the record before us affirmatively satisfies both prongs of the *Strickland* test, the appellant cannot prevail on a claim of ineffective assistance on direct appeal. *Bessey v. State,* 199 S.W.3d 546, 555 (Tex.App.-Texarkana 2006, pet. granted) (citing *Thompson v. State,* 9 S.W.3d 808, 813 (Tex.Crim.App.1999)). Certain appellate courts have, however, opined that there are rare cases wherein prejudice may be presumed rather than merely proven. *See, e.g., Javor v. United States,* 724 F.2d 831 (9th Cir.1984). Those appellate decisions, as well as any consequence such decisions may have in influencing our decision in this case, will be discussed in greater detail below.

### (2) The Record Does Not Establish Either Strickland Prong

■ With respect to *Strickland's* first prong, Moore contends he received ineffective assistance of counsel at trial because his trial counsel fell asleep during a portion of the State's cross-examination of Moore. Moore correctly notes that some courts have held that sleeping counsel is tantamount to no counsel at all. *See, e.g., Burdine v. Johnson,* 262 F.3d 336, 349 (5th Cir.2001) (federal habeas corpus proceeding, after Texas courts declined to find ineffective assistance of counsel; "repeated unconsciousness through not insubstantial portions of the critical guilt-innocence phase" of trial; prejudice presumed); *Tippins v. Walker,* 77 F.3d 682 (2nd Cir.1996) (counsel slept through "substantial" part of trial; prejudice presumed); *Javor,* 724 F.2d at 833 (counsel asleep during trial; prejudice presumed); *cf. Siverson v. O'Leary,* 764 F.2d 1208, 1216–17 (7th Cir. 1985) (trial counsel's physical absence from courtroom while jury deliberated held to be structural denial of counsel during critical stage of trial; no separate showing of prejudice was necessary); *State v. Keller,* 57 N.D. 645, 223 N.W. 698 (1929) (attorney intoxicated to such extent that "he did not know what was transpiring at all times"). In these rare cases, harm under *Strickland's* second (prejudice) prong is presumed after it is first shown under *Strickland's* first (deficient performance) prong that a substantial deprivation of counsel occurred. *Burdine,* 262 F.3d 336; *Javor,* 724 F.2d 831; *Tippins,* 77 F.3d 682; *cf. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657.

In this case and at the conclusion of the State's cross-examination of Moore, the following occurred:

> [State]: I'll pass the witness, Your Honor.
>
> THE COURT: Any re-direct?
>
> (No response from defense counsel.)
>
> THE COURT: Mr. Potter?
>
> [State]: Charlie?
>
> *RE–DIRECT EXAMINATION*
>
> Mr. Potter:

Q: Clyde, how long before that four days did....

Moore's counsel questioned Moore on re-direct examination for two pages in the record before passing the witness and resting his defense. Trial counsel's questions on re-direct concerned events that occurred during the same time period as those events about which the State had asked during the latter part of its cross-examination of Moore.

Shortly after the above events, the trial court excused the jury for a brief recess. During that recess, the following exchange appears:

THE COURT: At the end of the State's examination, cross[-]examination of the defendant in this case, the Court had to wake up defense counsel. And I want to talk about this on the record for just a minute, because sitting here as the judge, I had an opportunity to observe all of the participants in the case, including the attorneys, and my observation of the defense attorney in this case was that I had noticed that he had dozed off for a minute or less, shortly before the end of the State's cross[-] examination of the defendant. I guess let me just ask the court officers who are here—Mr. Shepherd, did you make any observations in that regard?

[State]: Your Honor, what the State observed after completing my cross[-]examination—and I did inform the Court that the State would pass the witness. I did come over to the State's table. I believe the Court addressed defense counsel, inquiring as to whether there would be any further re-direct. The State did observe that for a period of two to three seconds, defense counsel did not respond, but after about three seconds, he did respond, responded to the Court. And defense counsel did re-

turn to the podium to complete a re-direct examination of his client.

The State cannot say whether I personally observed defense counsel asleep or not asleep. The State is not in the position to determine whether defense counsel was, but I can place on the record that the defense counsel did return to the podium on re-direct examination and completed it with questions which were applicable to the facts in this case.

THE COURT: Let me ask, Mr. Feazell, the bailiff. Did you make any observations of the defense counsel?

[Bailiff]: Your Honor, all I noticed is—I was partially blocked. Mr. Shepherd was standing partially between me and defense counsel, and I could see defense counsel leaning over with his head in his hand. From my angle, I couldn't tell if he was asleep or was just trying to think. However, the Court asked him about three times to respond and he didn't until one of the court transportation officers went over and either touched him or shook him or something. But I don't know if he was asleep or just lost in thought.

THE COURT: Okay. Well, as I say, my position of being able to see everything that was going on, it was very momentary, but during the vast majority of the State's cross[-]examination of the defendant, counsel was awake, counsel was taking notes, and it was only toward the very end that this occurred, so I don't see that there's any particular issue that's been raised by this, but I wanted the record to be clear on that.

Let me ask Mr. Potter, do you have anything that you would like to add in that regard?

MR. POTTER: Your Honor, over the years, and I've been doing this almost forty years, I've developed a habit of

listening to testimony such as that with my eyes closed. I heard every question, I heard every answer during Mr. Shepherd's cross[-] examination.

I had formulated a couple of questions that I wanted to ask concerning the place of residence of the child before this incident happened, as well as her recent residence. Now, the question I was faced with at the end of this cross[-]examination was whether to ask the questions and give Mike another shot at him, or whether or not to ask any questions and get him off that stand.

Now, as you know, Mr. Moore disappeared from the courthouse quite some time ago when this case was set for trial. He was out and on the run, so to speak, for some period of time, and as recently, and I don't know exactly when, was arrested and placed in jail. It was my understanding that there was a possibility that this victim referred to as ... moved back into the house with [the defendant and his family] before he was arrested. And that's the problem I was facing. I didn't want to walk through a door and get blasted.

But like I say, to my knowledge, I was not asleep. I was thinking about those problems and trying to decide whether to ask him any more questions. I was not asleep.

THE COURT: Alright, sir.

MR. POTTER: And I did decide to ask those questions, but then I decided to shut up when I did because it could back fire on me.

As an attachment to his motion for new trial, Moore filed an affidavit from another attorney who was present during Moore's trial. That affidavit reads:

1. My name is Edward Ray Keith, Jr. I am an attorney duly licensed to practice law in the State of Texas. I was person-ally present during a portion of a criminal trial in the 5th Judicial District Court of Bowie County, Texas, wherein Mr. Charles Potter was acting as defense counsel and Mr. Mike Shepherd was acting as prosecutor.

2. During a portion of that trial it appeared that Mr. Charles Potter, defense counsel, was asleep. At one point during the trial, when called upon to question a witness, Mr. Potter was unresponsive to the trial judge and failed to respond to repeated requests. Mr. Potter finally responded when the prosecutor got up from his desk, walked over and nudged Mr. Potter.

Further affiant sayeth naught.

On appeal, Moore characterizes the Keith affidavit as being one incident during trial at which Moore's counsel slept. Moore then characterizes the jury recess colloquy (during which the trial court talked with the prosecutor, defense counsel, and others about the court's perception that defense counsel had been sleeping) as another, separate occurrence. The record before us, however, does not suggest that the Keith affidavit and the reporter's record truly describe separate events. Instead, the trial court's oral description and the description given in the Keith affidavit sound too similar to be describing separate events. The only significant difference in the two accounts is who nudged Moore's counsel; a difference which more likely indicates a difference in memory or a misapprehension of the identity of the person who nudged counsel. Additionally, the Keith affidavit lacks any description of what else had happened at that point in time, so as to demonstrate the point during the trial at which that alleged sleeping incident occurred. Nor, as the State properly points out in its appellate brief, does the affidavit even affirmatively state that the events being detailed were

directly related to Moore's case. Given the trial court's care at having a special colloquy about the incident it detailed, it is unlikely that another, separate event could have occurred and escaped the trial court's watchful eye, or that any other event was noticed but ignored by the trial court. We conclude the two sources describe one event only.[1]

The trial court concluded describing its perception of defense counsel's temporary lapse as nothing that caused the court concern. In so doing, that court had the opportunity to consider the State's assessment of the situation, the bailiff's espoused observations, and trial counsel's own explanations of the event. The trial court also had the opportunity to make these assessments shortly following the event in question. And, most importantly, the trial court was in the best position to gauge the believability of all involved, especially the believability of Moore's trial counsel.

■ The record before us suggests the trial court ultimately decided either (1) that Moore's counsel's "nap" was of such a temporary duration that it did not rise to the level of a "substantial" absence from the proceedings or (2) that Moore's counsel was not really asleep at all but instead merely deep in thought. The former assessment—that counsel's lapse amounted to no more than a temporary absence—would be supported by the record in this case. The court first suggested that counsel had been asleep for less than a minute or two. As such, we do not believe so brief a period is long enough to *require* the *automatic* presumption of prejudice under *Strickland's* prong, vis-a-vis *Javor* and

*Tippins. Cf. Bell v. Cone,* 535 U.S. 685, 697–98, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to presume prejudice in case where counsel was allegedly mentally ill because appellant had not brought forth uncontradicted proof of evidence regarding counsel's mental health and where claimed professional errors were of same type Court has typically held subject to *Strickland's* two-pronged approach); *McFarland,* 163 S.W.3d at 753–54 (under circumstances, no prejudice presumed).

Similarly, the trial court's latter potential assessment—that counsel was not asleep at all—is equally supported by the record, especially given the bailiff's description of events and counsel's own statement that he habitually places his head in his hands while thinking; that he did so in this case; that, during the time when the trial court saw him with his hands in his head, counsel was contemplating the various potential consequences of asking Moore additional questions following the State's cross-examination; and that the questions of Moore on re-direct examination (which trial counsel asked immediately after he was reportedly awakened) concerned the same time period and events that were at issue during the State's questioning at the end of its cross-examination of Moore. "Clyde, how long before that four days [when wife went to Little Rock] did [the victim] live with ya'll? How long had she been there when your wife went to the hospital?"). And, as the record supports the reasonable conclusion that Moore was not ever deprived of counsel because counsel was never asleep, then Moore has failed to meet his burden of proof under *Strickland's* first prong.

---

1. If these were separate events (especially when, as is the case here, the record before us is not at all clear that these incidents were distinct), then we believe habeas corpus would be a more appropriate avenue for developing a record that more clearly reflects such a distinction. *See, e.g., Goodspeed v. State,* 187 S.W.3d 390, 394 (Tex.Crim.App. 2005) (Price, J., concurring) (when record is inadequate to reflect factual basis for ineffective assistance claim, habeas corpus is a "more appropriate avenue").

Moreover—given that the record does not support the presumption of prejudice under *Strickland's* second prong vis-a-vis *Javor* and *Tippins*—even if Moore had met his appellate burden to demonstrate a deprivation of counsel during part of the trial, Moore must demonstrate that counsel's alleged ineffectiveness prejudiced the outcome of his case. Moore has not attempted to make such a showing; instead, he has pinned his hopes on presumptive prejudice, which we have already decided is not appropriate under the facts or law applicable in this case.

*(3) Conclusion*

The record before us does not demonstrate that Moore's trial counsel slept through critical or "substantial" portions of the trial. Instead, the appellate record lends itself to two, equally likely, conclusions: trial counsel may have had a brief lack of consciousness—like a schoolboy lost in a daydream—or a distracted focus on whether or to what degree counsel needed to conduct a re-direct examination of Moore after the State completed its cross-examination. As such, we cannot say the record before us supports Moore's claim of ineffective assistance. We, therefore, overrule Moore's sole point of error and affirm the trial court's judgment.