In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00252-CR


______________________________




FARON TODD, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 05F0376-202




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Carter



O P I N I O N



 A jury found Faron Todd guilty of four counts of aggravated sexual assault of a child and one
count of indecency with a child. See Tex. Penal Code Ann. § 22.021 (Vernon Supp. 2007),
§ 21.11 (Vernon 2003). The jury assessed Todd's punishment at sixty years' imprisonment on each
count of aggravated sexual assault and twenty years' imprisonment for the sole count of indecency
with a child. (1) Todd timely filed his motion for new trial, which was overruled by operation of law. 
See Tex. R. App. P. 21.4, 21.8(c). Todd now appeals his convictions, raising eight issues. After
hearing oral argument and considering the briefs in this case, we affirm Todd's convictions for the
reasons set forth below.

I. Excluding Specific Instances of Complainant's Past Sexual Behavior

 In his second point of error, Todd contends the trial court reversibly erred by excluding
evidence of the complainant's past sexual behavior. Pursuant to Rule 412 of the Texas Rules of
Evidence, the trial court prohibited several attempts by Todd to offer such evidence. See Tex. R.
Evid. 412.

 A. The Standard of Review

 We review a trial court's decision to admit or exclude evidence for abuse of discretion. 
Mozon v. State, 991 S.W.2d 841, 846-47 (Tex. Crim. App. 1999); Sherman v. State, 20 S.W.3d 96,
100 (Tex. App.--Texarkana 2000, no pet.). Such an inquiry necessarily depends on the facts of each
case. Sherman, 20 S.W.3d at 100. While an appellate court may decide it would have ruled
differently from the trial court on a particular evidentiary issue, such disagreement does not
inherently demonstrate an abuse of discretion. Manning v. State, 114 S.W.3d 922, 926 (Tex. Crim.
App. 2003). Instead, the appellate court may only find an abuse of discretion when the trial court's
decision "is so clearly wrong as to fall outside the zone of reasonable disagreement or when the trial
court acts arbitrarily and unreasonably, without reference to any guiding rules or principles." 
Reynolds v. State, 227 S.W.3d 355, 371 (Tex. App.--Texarkana 2007, no pet.).

 Generally, our rules favor admission of evidence that may be deemed relevant to the issues
presented at trial. See, e.g., Tex. R. Evid. 402. However, this general principle does not apply to
evidence of the victim's past sexual behavior during a trial for sexual assault or aggravated sexual
assault. Tex. R. Evid. 412. In such cases, our evidentiary rules take a contrary position by creating
an extremely high hurdle over which the accused's proposed evidence must clear before a trial court
may, in its discretion, admit such evidence. Specifically, our evidentiary rules state:

 (b) . . . In a prosecution for sexual assault or aggravated sexual assault,
or attempt to commit sexual assault or aggravated sexual assault, evidence of specific
instances of an alleged victim's past sexual behavior is also not admissible, unless:


 (1) such evidence is admitted in accordance with paragraphs (c) and (d)
of this rule;


 (2) it is evidence:


 (A) that is necessary to rebut or explain scientific or medical
evidence offered by the State;


 (B) of past sexual behavior with the accused and is offered by the
accused upon the issue of whether the alleged victim consented to the sexual
behavior which is the basis of the offense charged;

 

 (C) that relates to the motive or bias of the alleged victim;

 

 (D) is admissible under Rule 609; or

 

 (E) that is constitutionally required to be admitted; and

 

 (3) its probative value outweighs the danger of unfair prejudice.

 

 (c) . . . If the defendant proposes to introduce any documentary evidence
or to ask any question, either by direct examination or cross-examination of any
witness, concerning specific instances of the alleged victim's past sexual behavior,
the defendant must inform the court out of the hearing of the jury prior to introducing
any such evidence or asking any such question. After this notice, the court shall
conduct an in camera hearing, recorded by the court reporter, to determine whether
the proposed evidence is admissible under paragraph (b) of this rule. The court shall
determine what evidence is admissible and shall accordingly limit the questioning. 
The defendant shall not go outside these limits or refer to any evidence ruled
inadmissible in camera without prior approval of the court without the presence of
the jury.


 (d) . . . The court shall seal the record of the in camera hearing required
in paragraph (c) of this rule for delivery to the appellate court in the event of an
appeal.


Tex. R. Evid. 412. 

 This Court has previously held that a trial court errs if the court excludes defensive evidence
that might offer an alternative explanation for the State's medical evidence that suggests the victim
had been sexually assaulted. Reynolds v. State, 890 S.W.2d 156, 157-58 (Tex. App.--Texarkana
1994, no pet.). But such contrary evidence (when offered by the defendant) must directly
address--and must clearly contradict--the State's evidence. See, e.g., Wofford v. State, 903 S.W.2d
796, 799 (Tex. App.--Dallas 1995, pet. ref'd) (trial court does not err by excluding evidence of
victim's promiscuity with third parties unless those particular sexual activities are material to issue
in case); Rankin v. State, 821 S.W.2d 230 (Tex. App.--Houston [14th Dist.] 1991, no pet.) (evidence
alleged victim had engaged in oral sex not admissible; evidence did not impeach State's medical
evidence on issue of vaginal penetration and referred only to conduct occurring after date of last
offense with which defendant was charged); Leger v. State, 774 S.W.2d 99 (Tex. App.--Beaumont
1989, pet. ref'd) (evidence of other sexual conduct, such as victim's working as topless dancer, taking
money for sex twice, and living with man to whom she was not married, could not be used to attack
victim's credibility).

 B. The Charges Against Todd

 The indictment against Todd contained five counts, which can be summarized as follows: 
(1) Todd caused Angel's anus to contact his penis on October 4, 2004; (2) Todd penetrated Angel's
mouth with his sexual organ on July 15, 2004; (3) Todd penetrated Angel's anus with his sexual
organ on April 1, 2004; (4) Todd penetrated Angel's sexual organ with his sexual organ on April 15,
2004; and (5) Todd caused Angel to touch his sexual organ on June 15, 2004. We will now turn to
a comparison of the indicted charges and the State's evidence with the excluded evidence. Even
though there is no challenge to the sufficiency of the evidence, a summary is provided to clarify the
rationale for and the explanation of the questions raised regarding the excluded evidence of alleged
past sexual behavior.

 Angel testified that Todd made her touch his sexual organ with her hand, touched her sexual
organ with his sexual organ, touched his penis to her "bottom," and put his penis inside her "bottom." 
He also penetrated her mouth with his penis. Vickie Hurst, a sexual assault nurse examiner, found
evidence of a recent trauma to Angel's hymen at a location of four o'clock; this was further described
as a notch. This notch had, in Hurst's opinion, occurred within the previous seventy-two hours. The
location of this notch verified Angel's description that Todd was lying down with Angel on top and
with her back to his face. Hurst also noted a well-healed scar at a location between eleven and
twelve o'clock. 

 C. The Excluded Evidence of Alleged Past Sexual Behavior

 The excluded evidence can be grouped into several areas: (1) whether Angel had engaged
in sexual conduct with her younger cousin, (2) whether Angel allowed one or more pets to play with
her sexual organs, (3) whether Angel's mother had told one of her employees about fearing Angel
would accuse a new boyfriend of molesting her, and (4) whether Angel's mother kept pornography
in the home. We will now address each grouping of subject matter.

 1. The Alleged Sexual Conduct with Her Cousin

 Todd sought to bring forth testimony via cross-examination of Angel, her mother (Jennifer),
and through the direct testimonies of Samantha Lamon (Todd's older daughter), Todd himself, and
Janice Eaglebarger (the mother of Angel's cousin), that Angel had previously engaged in sexual
conduct with her younger cousin. This male cousin was two years younger than Angel, making him
approximately nine years old at the time of Angel's abuse outcry. The trial court denied Todd's
request to present evidence to the jury of an alleged sexual relationship between Angel and the
younger cousin on the basis that such evidence was prohibited by Rule 412.

 On the record before us, several reasons dissuade us from concluding the trial court abused
its discretion by excluding such testimony. First, Todd offered no evidence, whether direct or
indirect, that any of the alleged sexual conduct between Angel and her cousin occurred within the
seventy-two-hour period preceding Hurst's performing the sexual assault examination. Such
evidence of recentness would be necessary in this case to link the conduct with the cousin to the
evidence about the four o'clock notch noticed by Hurst, which Hurst described as having occurred
most likely within the twenty-four-hour period preceding the examination. Without any evidence
that the cousins had recently engaged in sexual relations, testimony about Angel's alleged other
sexual relationships does not serve to explain, let alone rebut, the State's evidence regarding the more
recent four o'clock notch.

 Second, some of the proposed (but excluded) testimony did not serve to refute the State's
evidence. Hurst had testified that the four o'clock notch on Angel's hymen was consistent with her
facing away from the person who had penetrated her sexual organ. Lamon's excluded testimony
suggested she had found the two children having sexual intercourse, but were facing each other
during the alleged act. If such conduct had occurred, and if such conduct had resulted in scarring
to Angel's hymen, the resulting scar would not, according to the logic of the testimony of Hurst, have
been located at four o'clock. Therefore, Lamon's excluded testimony would not serve to refute the
State's medical evidence regarding the cause of the more recent four o'clock notch to Angel's hymen. 
See Tex. R. Evid. 412.

 Third, Todd offered no evidence, whether direct or indirect, that Angel's younger cousin, a
mere child of no more than nine years of age, would have been physically capable of causing the
older, eleven-to-twelve o'clock notch observed by Hurst on Angel's hymen. The trial court could
have reasonably concluded such additional evidence would be necessary before the court could admit
the evidence as a reasonable, alternative explanation for the State's medical evidence. Yet Todd
offered no such additional evidence to link the cousin's physical capabilities with the medical
evidence. Therefore, without more, we cannot say the trial court acted outside the wide zone of
reasonable disagreement by excluding evidence of an alleged sexual relationship between Angel and
this other presumptively prepubescent child. Cf. State v. Dudley, 223 S.W.3d 717, 724 (Tex.
App.--Tyler 2007, no pet.) (trial court did not err by excluding questions about conduct when
answers would not bear on whether sexual assault occurred).

 2. The Pets

 Todd also sought to ask Angel's mother, in the jury's presence, whether she had seen any
inappropriate behavior between Angel and one or more pets. The trial court prohibited Todd from
asking such questions in the jury's presence on the basis that the danger of unfair prejudice
outweighed the probative value of any potential affirmative response. 

 We first note that Todd made no effort to offer evidence that allowing a pet to touch an
eleven-year-old girl's sexual organ is capable of causing the type of hymenal scarring noted by Hurst
to be present in Angel. Next, Todd offered no evidence of a time frame in which this alleged
bestiality occurred, so as to allow the finder of fact to link that alleged conduct to Hurst's medical
testimony. Finally, the trial court could have reasonably concluded the probative value of this
evidence (if any) was outweighed by its likely prejudicial effect on the jury. Therefore, we cannot
say the trial court acted outside the wide zone of reasonable disagreement in excluding this proposed
evidence.

 3. Telling an Employee She Feared Angel Might Falsely Accuse Her
Mother's New Boyfriend


 The trial court also prohibited Todd's trial counsel from asking Angel's mother whether she
had told one of her former employees that she feared Angel might falsely accuse the mother's new
boyfriend of sexually assaulting her. The trial court held such evidence was inadmissible under Rule
412; the trial court also opined that the probative value of the evidence was outweighed by its
potential for unfair prejudice. 

 Angel's mother denied making such a statement. Todd has directed our attention to no
testimony that was offered, either in the jury's presence or outside it, that suggests Angel's mother
made such a statement to her former employee. 

 We believe the trial court's ruling was not outside the zone of reasonable disagreement for
several reasons. First, even if Angel's mother had admitted making such a statement, such evidence
would not serve to refute the State's medical evidence. Second, even if Angel's mother had admitted
making such a statement, such an admission would not serve to directly contradict Angel's
accusation against her stepfather. Third, the trial court could have reasonably concluded that the
danger of unfair prejudice to the victim in this case by allowing defense counsel to ask this question
in the jury's presence greatly outweighed the probative value of obtaining a denial from Angel's
mother. Therefore, we cannot conclude the trial court's ruling on this issue constituted an abuse of
discretion.

 4. Pornography

 Finally, Todd sought to ask Angel's mother whether she owned and/or watched pornographic
videos in her home. The trial court prohibited Todd from pursuing this line of cross-examination
in the jury's presence. The trial court held that, because there was no specific evidence Angel had
herself ever viewed any such videos, the danger of unfair prejudice outweighed the probative value
of such questioning. We agree. Therefore, we cannot say the trial court abused its discretion by
prohibiting Todd from asking Angel's mother such questions on cross-examination.

II. Not Granting Todd's Motion for New Trial

 In his first point of error, Todd contends the trial court erred by not granting a new trial
because Todd asserts the evidence shows two jurors in his case came in contact with other persons
during a recess in the trial proceedings. We review a trial court's ruling on a motion for new trial for
abuse of discretion. Holden v. State, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). A trial court
abuses its discretion in denying a motion for new trial "only when no reasonable view of the record
could support the trial court's ruling." Id. 

 The record before us suggests two or more persons (who had been observing Todd's trial)
were talking about the trial during a break in the proceedings. The substance of their conversation
was that Todd was obviously guilty of the charges he faced. This conversation reportedly took place
at a location near where two of Todd's jurors were also standing during the recess. Todd attached
an affidavit to his motion for new trial from someone who also heard this at-issue conversation. The
affidavit, signed by Elisa Reed (who was not a juror in Todd's case) states,

 I attended the trial of Faron Dwayne Todd. During a recess in the trial, several jurors
went to an area of the courthouse where smoking is allowed to smoke cigarettes. On
this outside porch, other persons who had been in the courtroom observing the trial
were also present smoking cigarettes. Two of the persons on the porch were verbally
discussing their opinion that Faron Dwayne Todd was obviously guilty and sick. I
was present when this conversation occurred[,] and I observed and overheard this
discussion. I am sure the jurors did also. Someone in the hallway outside the
courtroom saw this contact and began yelling[,] "Mistrial!". The court's bailiff was
notified of this contact with jurors[,] and he separated the jurors from the other
persons on the porch. I also heard other trial observers yelling[,] "Child molester!"
in the hallway during this time.


Todd now asserts this affidavit from Reed provides sufficient evidence to necessitate the granting
of Todd's motion for new trial.

 As a prerequisite to complaining about a trial court's failure to grant a motion for new trial,
the appellate record must demonstrate both that a motion for new trial was filed and that the
appellant took the additional step of presenting this motion to the trial court. Tex. R. App. P. 21.6;
Rozell v. State, 176 S.W.3d 228, 230 (Tex. Crim. App. 2005). This presentment requirement "is
satisfied when the movant 'actually deliver[s] the motion for new trial to the trial court or otherwise
bring[s] the motion to the attention or actual notice of the trial court.'" Coronado v. State, 25 S.W.3d
806, 810 (Tex. App.--Waco 2000, pet. ref'd) (quoting Carranza v. State, 960 S.W.2d 76, 79 (Tex.
Crim. App. 1998)).

 In this instance, the trial court never entered an order regarding the motion; it was simply 
overruled as a matter of law. The record in this case does not otherwise affirmatively demonstrate
Todd presented his motion for new trial to the court below. Accordingly, he may not now complain
the trial court abused its discretion by allowing Todd's motion for new trial to be overruled by
operation of law.

III. Permitting an Investigator to Testify DFPS Had "Reason To Believe"

 In his third appellate issue, Todd contends the trial court erred by allowing an investigator
for the Texas Department of Family and Protective Services (DFPS) to testify her office had "reason
to believe" Angel's allegations of being sexually assaulted by Todd. As stated previously, we review
a trial court's decision to admit or exclude evidence for abuse of discretion. Menefee v. State, 211
S.W.3d 893, 902 (Tex. App.--Texarkana 2006, pet. ref'd). However, an appellate court may
consider evidentiary challenges on appeal only when those issues were properly raised and presented
before the trial court. Tex. R. App. P. 33.1; Montanez v. State, 195 S.W.3d 101, 104 (Tex. Crim.
App. 2006); Runnels v. State, 193 S.W.3d 105, 107-08 (Tex. App.--Houston [1st Dist.] 2006, no
pet.).

 The challenged testimony comes from Investigator Sharonda Mack. Immediately before
Mack's testimony which is now under attack, she was cross-examined by Todd's attorney who
commented that Mack had used the phrase "alleged victim" when referring to the child. The
following exchange then occurred between defense counsel and Mack: 

 Q [By Todd's attorney] You're not doing or responsible for any criminal
conclusions, are you? 


 A [By Mack] No, sir. 


 On re-direct, the following exchange took place in the jury's presence: 

 Q [By the State] What was the conclusion of your investigation?

 

 A [By Mack] It was reason --.

 

 [By Todd's attorney]: Object to that as irrelevant to this proceeding,
Your Honor. She's making an attempt based on a question like that in a criminal
court of law to put herself in the place of the trier of fact. We're not here to analyze
a CPS case.

 

 [By the State]: Your Honor, may we approach?

 

 THE COURT: Well, I don't know that we need to. I'm going to allow
the question. However, this is just the basis of her conclusion. Of course, this jury
will make the final determination. You may answer the question.

 

 Q [By the State] What was the conclusion of your investigation for the
department?

 

 A [By Mack] Reason to believe.

 

 [By the State]: Pass the witness.

 

 [By Todd's attorney]: I'm sorry. I just didn't hear. Would you repeat
that?

 

 A [By Mack] Reason to believe.

 

 [By Todd's attorney]: We would again renew our objection, Your
Honor, and move for a mistrial.

 

 THE COURT: Overruled.


 The objection raised by Todd at trial concerned the relevancy of Mack's testimony. 
Relevancy is covered by Rule 402 of the Texas Rules of Evidence. The objection now raised by
Todd on appeal asserts that, because Mack was not offered or certified as an expert witness on the
issue of victim credibility, her lay opinion is not admissible about an ultimate fact to be decided by
the jury. The appropriateness of expert testimony is governed by Rule 702 of the Texas Rules of
Evidence. Tex. R. Evid. 702. The issue now being raised on appeal was not first presented in the
court below. Accordingly, this issue has not been preserved for appellate review. 

 Further, based on the sequence of events presented above, it appears the State was responding
to a subject (the investigator reaching conclusions) originally opened by the cross-examination of
Mack. Moreover, even if this issue had been preserved, considering the greater context in which
Mack's statement was made, we would not conclude the trial court's ruling was outside the wide zone
of reasonable disagreement.

IV. Issues 4-7: Ineffective Assistance of Counsel

 In his final four issues, Todd contends he received ineffective assistance of counsel because
the defense attorney (a) "failed to request a hearing on the fact that jurors had contact with trial
observers during a recess in the trial"; (b) "failed to call a witness, who was subpoenaed and present
at the courthouse, to rebut certain claims made by a State's witness"; (c) "failed to move for a
directed verdict of acquittal"; and (d) "failed to cross[-]examine a State's witness about other possible
causes of the complainant's trauma." 

 There are many problems attendant to raising a claim of ineffective assistance claims on
direct appeal. As we recently observed,

 When, as here, ineffective assistance is raised on direct appeal, appellate 
counsel and the court must proceed on a trial record not developed for the object of
litigating or preserving the claim and thus often incomplete or inadequate for this
purpose. Freeman v. State, 125 S.W.3d 505, 506 (Tex. Crim. App. 2003); cf.
Massaro v. United States, 538 U.S. 500, 504-05 (2003). Nonetheless, some claims
may be disposed of on direct appeal where "trial counsel's ineffectiveness is so
apparent from the record." Massaro, 538 U.S. at 508; Freeman, 125 S.W.3d at 506;
see also Andrews v. State, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005); Thompson
v. State, 9 S.W.3d 808, 814 n.6 (Tex. Crim. App. 1999). "[W]hen no reasonable trial
strategy could justify the trial counsel's conduct, counsel's performance falls below
an objective standard of reasonableness as a matter of law, regardless of whether the
record adequately reflects the trial counsel's subjective reasons for acting as she did." 
Andrews, 159 S.W.3d at 102. A claim of ineffective assistance of counsel, on an
undeveloped record on direct appeal, should, nonetheless, "be entertained and upheld
if supported by the record." 

Fuller v. State, 224 S.W.3d 823, 828-29 (Tex. App.--Texarkana 2007, no pet.) (footnote omitted);
see also Oldham v. State, 977 S.W.2d 354, 360 (Tex. Crim. App. 1998). If the record on direct
appeal is inadequate, habeas corpus is the more appropriate avenue for developing the record on this
issue. Moore v. State, 227 S.W.3d 421, 426 n.1 (Tex. App.--Texarkana 2007, pet. ref'd). Moreover,
if the appellate court can imagine a strategic motive to explain the ineffective assistance claim, then
the reviewing court may not sustain the appellant's point of error. Freeman, 125 S.W.3d at 511
(citing Bone v. State, 77 S.W.3d 828, 833 n.13 (Tex. Crim. App. 2002)).

 A. Failure to Request a Hearing to Have Jurors Testify

 Initially, Todd contends his trial counsel provided ineffective assistance by failing to request
a hearing on the motion for new trial; at this hearing, Todd asserts, his trial counsel should have
sought to call the jurors in his case to testify about the impact of the inappropriate conversation
allegedly overheard by those jurors during a trial recess. 

 The record before us contains no explanation from Todd's trial counsel as to why he did not
request a hearing before the trial court. We can, however, imagine a strategic explanation: it is
possible Todd's counsel had already informally interviewed those jurors and come to the conclusion
that the allegedly inappropriate conversation was either not heard by the jurors or had no impact on
the jury's deliberations. Under such a circumstance, it would not amount to ineffective assistance
to request a hearing for the trial court to consider evidence that would only refute Todd's claim of
improper influence of the jury.

 Because we can envision a reason to explain trial counsel's allegedly inappropriate service,
we cannot sustain Todd's claim on this basis.

 B. Failing to Call a Witness to Testify at Trial

 Todd next contends he received ineffective assistance because his trial attorney failed to call
Keisha Ward to testify; Todd now asserts Ward was present at the courthouse and could have
rebutted the testimony of Jennifer Todd, his former wife. Todd filed an affidavit from Ward in
connection with his motion for new trial. That affidavit, in its entirety, states:

 My name is Keisha Ward. I am over the age of 18 and fully competent to
make this affidavit. I was subpoenaed by the State of Texas to testify at the trial of
Faron Dwayne Todd. I had also spoken [to] Mr. Todd's attorney, or his agent, about
testifying as a defense witness, but I was not subpoenaed by the defense. I was
present during the trial, but remained outside the courtroom. I possessed information
which I think would have been helpful to the defense, but I was never called as a
witness by either party, and thus, never testified at the trial.

 

 FURTHER AFFIANT SAYETH NOT.


 Ward's affidavit makes clear that she had spoken to Todd's trial attorney, or the attorney's
agent, before trial. Without direct evidence from the trial attorney to the contrary, this Court must
presume Todd's trial counsel had a strategic reason for not calling Ward. See, e.g., Melancon v.
State, 66 S.W.3d 375, 378-81 (Tex. App.--Houston [14th Dist.] 2001, pet. ref'd) (en banc). For
example, it is possible counsel had adjudged Ward's testimony not to be of material value to Todd's
defense because Ward lacked personal knowledge of the events about which she planned to testify. 
See, e.g., Tex. R. Evid. 802 (prohibiting admission of hearsay).

 C. Failure to Move for a Directed Verdict of Acquittal

 Todd next contends his trial counsel provided ineffective assistance because counsel failed
to move for a directed verdict of acquittal. A motion for a directed verdict of acquittal is a challenge
to the legal sufficiency of the evidence; if such a challenge is sustained, it results in the immediate
dismissal of the charges against the accused. See Yarborough v. State, 178 S.W.3d 895, 903 (Tex.
App.--Texarkana 2005, pet. ref'd). It is possible Todd's trial counsel, having heard all the State's
evidence, realized the testimonies of Angel and Hurst by themselves provided legally sufficient
evidence, if believed, to support a judgment of conviction. Such a rationalization for not moving
for a directed verdict would reasonably explain trial counsel's alleged shortcoming on this issue. (2)

 D. Failure to Cross-Examine Hurst About Other Possible Causes of Angel's
Trauma


 Finally, Todd contends his trial counsel provided ineffective assistance because counsel
failed to ask Hurst about other possible causes for the trauma to Angel's hymen. 

 The record before this Court does not contain any testimony, via a hearing or an affidavit,
from Todd's trial counsel about his decision to not explore every last alternative hypothesis for how
the victim's hymen might have sustained the more recent four o'clock notch or the less recent eleven-to-twelve o'clock notch. 

 Under most circumstances, the record on direct appeal will not be sufficient
to show that counsel's representation was so deficient and so lacking in tactical or
strategic decision-making as to overcome the strong presumption that counsel's
conduct was reasonable and professional. Bone, 77 S.W.3d at 833. As this Court
recently explained, rarely will the trial record contain sufficient information to permit
a reviewing court to fairly evaluate the merits of such a serious allegation: "[i]n the
majority of cases, the record on direct appeal is simply undeveloped and cannot
adequately reflect the failings of trial counsel." Id. A reviewing court can frequently
speculate on both sides of an issue, but ineffective assistance claims are not built on
retrospective speculation; rather, they must "be firmly founded in the record." Id.


 From the information available to us, we can only speculate as to why counsel
acted or failed to act as they did. Id.; Ex parte Torres, 943 S.W.2d 469, 475 (Tex.
Crim. App. 1997); Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). 
Without more, we must presume that counsel acted pursuant to a reasonable trial
strategy. Id.


Scheanette v. State, 144 S.W.3d 503, 510 (Tex. Crim. App. 2004).

 In the case now before this Court, Todd's trial counsel could have had a strategic reason for
not exploring the additional potential causes of the recent trauma to Angel's hymen that Todd now
raises on appeal. The record does, however, show defense counsel pursued this line of questioning
to a limited extent--but did so with absolutely no success. Given that we must presume counsel had
a strategic reason for discontinuing this line of questioning, we cannot sustain this claim of
ineffective assistance.

V. Conclusion

 The record before us does not support Todd's claims of ineffective assistance of counsel. 
Todd's failure to present his motion for new trial precludes appellate review of that motion being
overruled by operation of law. And the record before us does not demonstrate the trial court abused
its discretion regarding its decisions to admit or exclude the complained-of evidence. 

 We affirm the judgments.



 

 Jack Carter

 Justice


Date Submitted: November 7, 2007

Date Decided: November 16, 2007


Publish
1. In keeping with the parties' use of such on appeal, our opinion refers to the complainant
using the pseudonym Angel Nicole (Angel). See Tex. Code Crim. Proc. Ann. art. 57.02 (Vernon
Supp. 2007). 
2. In a criminal trial, it is not necessary to present a motion for a directed verdict in order to
challenge the sufficiency of the evidence on appeal. See Moff v. State, 131 S.W.3d 485, 488 (Tex.
Crim. App. 2004) (citing Rankin v. State, 46 S.W.3d 899, 901 (Tex. Crim. App. 2001)). 


July
25, 2011

Date Decided:             July
26, 2011