In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00064-CR


______________________________




JOSEF TYREE MERCED, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the County Court at Law No. 2


Gregg County, Texas


Trial Court No. 35044-A




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Josef Tyree Merced appeals his conviction for murder. See Tex. Penal Code Ann.
§ 19.02(b) (Vernon 2003). Merced's sole point of error alleges his trial counsel provided ineffective
assistance. We overrule this issue and affirm his conviction.

 The Sixth Amendment to our Federal Constitution guarantees the accused in a criminal case
the right to counsel. See U.S. Const. amend. VI; Powell v. Alabama, 287 U.S. 45 (1932). Implicit
in this constitutional guarantee is the right to a competent and functioning counsel. Strickland v.
Washington, 466 U.S. 668, 685-86 (1984); United States v. Cronic, 466 U.S. 648, 654 (1984). If
an accused's counsel provides incompetent and ineffective assistance at trial, and if it can be said that
such ineffective assistance rises to the level of a due process violation, then such failings undermine
our faith in the outcome of the accused's trial. See Strickland, 466 U.S. at 685; Cronic, 466 U.S. at
654.

 To prevail on a claim of ineffective assistance, the appellant must demonstrate first "that his
counsel's conduct was objectively deficient." Ex parte McFarland, 163 S.W.3d 743, 753 (Tex.
Crim. App. 2005) (citing Cronic, 466 U.S. at 658). "In assessing this, we look to see if counsel was
acting as 'a reasonably competent attorney' would under the circumstances." Id. (citing Strickland,
466 U.S. at 687). The appellant has the burden of proof on appeal, and he or she "must overcome
a 'strong presumption that counsel's performance fell within the wide range of reasonable
professional assistance.'" Id. (citing Strickland, 466 U.S. at 689). In essence, the appellant must
show that the trial attorney made errors that are "so serious that counsel was not functioning as the
'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687.

 There are many problems attendant to raising a claim of ineffective assistance on direct
appeal. As we recently observed,

 When, as here, ineffective assistance is raised on direct appeal, appellate
counsel and the court must proceed on a trial record not developed for the object of
litigating or preserving the claim and thus often incomplete or inadequate for this
purpose. Freeman v. State, 125 S.W.3d 505, 506 (Tex. Crim. App. 2003); cf.
Massaro v. United States, 538 U.S. 500, 504-05 (2003). Nonetheless, some claims
may be disposed of on direct appeal where "trial counsel's ineffectiveness is so
apparent from the record." Massaro, 538 U.S. at 508; Freeman, 125 S.W.3d at 506;
see also Andrews v. State, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005); Thompson
v. State, 9 S.W.3d 808, 814 n.6 (Tex. Crim. App. 1999). "[W]hen no reasonable trial
strategy could justify the trial counsel's conduct, counsel's performance falls below
an objective standard of reasonableness as a matter of law, regardless of whether the
record adequately reflects the trial counsel's subjective reasons for acting as she did." 
Andrews, 159 S.W.3d at 102. A claim of ineffective assistance of counsel, on an
undeveloped record on direct appeal, should, nonetheless, "be entertained and upheld
if supported by the record." 


Fuller v. State, 224 S.W.3d 823, 828-29 (Tex. App.--Texarkana 2007, no pet.) (footnote omitted);
see also Oldham v. State, 977 S.W.2d 354, 360 (Tex. Crim. App. 1998). If the record on direct
appeal is inadequate, habeas corpus is the more appropriate avenue for developing the record on this
issue. Moore v. State, 227 S.W.3d 421, 426 n.1 (Tex. App.--Texarkana 2007, pet. ref'd). Moreover,
if the appellate court can imagine a strategic motive to explain the ineffective assistance claim, then
the reviewing court may not sustain the appellant's point of error. Freeman, 125 S.W.3d at 511
(citing Bone v. State, 77 S.W.3d 828, 833 n.13 (Tex. Crim. App. 2002)).

 Merced contends he received ineffective assistance because his trial counsel neither
challenged the admissibility of Merced's videotaped statement nor moved to suppress the State's
remaining evidence. 

 First, Merced's appellate counsel characterizes the videotaped statement now at issue as
showing the detective who conducted the custodial interrogation of Merced as "making repeated
accusations and blatant lies to the Appellant." Merced nevertheless believes counsel's failure to seek
suppression of such a statement results in constitutionally ineffective assistance. We disagree.

 It would not have been an unreasonable trial tactic for Merced's trial counsel to affirmatively
want such evidence admitted at trial. This is because a reasonable and common defensive strategy
is to discredit the State's case by demonstrating that the State's witnesses are not credible. If the
videotape convinced the jury that the police officers were lying to or misleading the defendant, it
might have seriously damaged the credibility of the State's evidence. Accordingly, because we can
perceive a strategic reason to explain trial counsel's acquiescence to the admission of the videotape,
the record on appeal will not support Merced's claim of ineffective assistance on this basis.

 Second, with respect to the allegation of receiving ineffective assistance because trial counsel
did not file a motion to suppress, Merced has not affirmatively demonstrated that the record would
have required the suppression of any of the State's evidence. As such, it is plausible that counsel had
reviewed the State's evidence, and (having been an attorney with substantial practice before this
particular trial court) made the professional judgment that the trial court hearing the case would have
been unlikely to grant any motion to suppress based on the discrete facts known by counsel and the
current state of the law. Accordingly, because we can conceive a justification for trial counsel's
alleged failure, the appellate record will not support a reversal based on Merced's allegations of
ineffective assistance.

 We affirm the trial court's judgment.


 


 Jack Carter

 Justice


Date Submitted: February 6, 2008

Date Decided: February 29, 2008


Do Not Publish



who arrived on the scene were Paul Hickey and Paul Penick of the
Longview Police Department. Hickey and Penick took Sullivan into custody. 

 The Stovalls identified Sullivan in open court as the person who was stealing the A.T.V. and
who assaulted them both. The Stovalls also testified that they had not given Sullivan permission to
take the A.T.V. Hickey and Penick identified Sullivan as the person they took into custody; Hickey
also testified Sullivan had tried to escape after being placed in handcuffs, but Hickey tackled
Sullivan before he could get away. Finally, both Hickey and Penick identified the Stovalls' shotguns
as deadly weapons capable of causing death or serious bodily injury, even if used as a club. Sullivan
sponsored no rebuttal evidence or testimony. 

 Viewing the evidence in the light most favorable to the jury's verdict, the State's evidence
satisfied each essential element of the charged crime. The record is clear that Sullivan assaulted both
Jeremy and Robert during the course of committing or attempting to commit a theft or in an effort
to flee from the scene. Sullivan used Jeremy's gun, which the officers identified as a deadly weapon,
to injure Jeremy. The evidence rationally supports the conclusion that the theft had not been fully
completed, as the Stovalls were able to interrupt the theft before Sullivan could escape the Stovalls'
property (which sat approximately 300 feet from the roadway) with the A.T.V. Accordingly, we
conclude the jury's verdict is supported by legally sufficient evidence.

 Similarly, we believe that, when looking at all the evidence in a neutral light, the jury could
have rationally concluded the State had met its burden of proving the essential elements of the crime
beyond a reasonable doubt. We find nothing about the jury's "guilty" verdict to be manifestly unjust,
nor is it contradicted by the great weight and preponderance of the evidence. Accordingly, the
evidence is factually sufficient to support Sullivan's conviction.

 We overrule Sullivan's challenge to the sufficiency of the evidence.

(2) Sullivan Was Not Entitled to a Jury Charge on the Lesser-Included Offense of Theft

 Sullivan also contends the trial court erred by refusing to submit a requested lesser-included
offense jury instruction on the offense of theft. During the charge conference, (2) Sullivan asked for
a jury instruction that would permit the jury to find him guilty of theft of property valued at more
than $1,500.00, but less than $20,000.00, (3) rather than aggravated robbery. The trial court overruled
Sullivan's request, commenting, 

The definition of "in the course of committing theft" means conduct that occurs in
an attempt to commit, during the commission or in immediate flight after the attempt
of the commission. It doesn't make any difference whether the theft was complete
or not. This is going to be immediate flight for sure.

 To determine whether a charge on a lesser-included offense should be given, we apply a
two-step test. Mathis v. State, 67 S.W.3d 918, 925 (Tex. Crim. App. 2002); see Aguilar v. State, 682
S.W.2d 556, 558 (Tex. Crim. App. 1985); Royster v. State, 622 S.W.2d 442, 444 (Tex. Crim. App.
[Panel Op.] 1981) (plurality opinion). The first step is to decide whether the offense is a lesser-included offense of the offense charged. See Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon
2006); Mathis, 67 S.W.3d at 925. The second step of the test requires us to evaluate the evidence
to determine whether there is some evidence that would permit a jury rationally to find that the
defendant is guilty only of the lesser offense. Mathis, 67 S.W.3d at 925; Wesbrook v. State, 29
S.W.3d 103, 113 (Tex. Crim. App. 2000); Moore v. State, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998). 
Further, the evidence must establish the lesser-included offense as a valid rational alternative to the
charged offense. Wesbrook, 29 S.W.3d at 113 (citing Arevalo v. State, 943 S.W.2d 887, 889 (Tex.
Crim. App. 1997)). "[I]t is not enough that the jury may disbelieve crucial evidence pertaining to
the greater offense; there must be some evidence directly germane to a lesser included offense for
the factfinder to consider before an instruction on a lesser included offense is warranted." Bignall
v. State, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994).

 Theft can be a lesser offense of aggravated robbery. Id. at 23. As we have noted, "in the
course of committing theft" includes "conduct that occurs in an attempt to commit, during the
commission, or in immediate flight after the attempt or commission of theft." Tex. Penal Code
Ann. § 29.01(1) (Vernon 2003). From the record before us, we cannot say there is any evidence that
Sullivan is guilty of only theft, because all the evidence indicates Sullivan's assault of Jeremy, using
the stock end of the .410 gauge shotgun, occurred while Sullivan was either committing the theft,
attempting that theft, or attempting to flee from the scene of the crime. There is no evidence in the
record that Sullivan had completed the theft, fled the scene of the crime, and thereafter returned to
commit a separate assault. All the evidence in the record leads to but a single conclusion: Sullivan
assaulted Jeremy with the gun "in the course of committing theft." Accordingly, the trial court
properly overruled Sullivan's requested jury instruction.

(3) Sullivan's Sentence Is Not Disproportionate

 Sullivan finally contends his sentence of imprisonment for life is disproportionate to his
crime, citing Solem v. Helm, 463 U.S. 277 (1983). (4) The State counters that this punishment was
within the range provided by the Legislature and is, therefore, acceptable. 

 Texas courts have traditionally held that, as long as the punishment assessed is within the
range prescribed by the Legislature in a valid statute, the punishment is not excessive, cruel, or
unusual. See, e.g., Jordan v. State, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973). Here, Grimes'
sentence falls within the applicable range of 180 days to two years. See Tex. Penal Code Ann.
§ 12.35 (Vernon 2003).

 That does not end the inquiry. A prohibition against grossly disproportionate punishment
survives under the Eighth Amendment to the United States Constitution apart from any consideration
of whether the punishment assessed is within the range established by the Legislature. U.S. Const.
amend. VIII; see Solem, 463 U.S. at 290; Harmelin v. Michigan, 501 U.S. 957 (1991) (Scalia, J.,
plurality op.); Dunn v. State, 997 S.W.2d 885, 892 (Tex. App.--Waco 1999, pet. ref'd); Jackson v.
State, 989 S.W.2d 842, 845 (Tex. App.--Texarkana 1999, no pet.); Lackey v. State, 881 S.W.2d 418,
420-21 (Tex. App.--Dallas 1994, pet. ref'd). 

 Solem had suggested, as a three-part test, that an appellate court consider: (1) the gravity of
the offense compared with the harshness of the penalty; (2) the sentences imposed for similar crimes
in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other
jurisdictions. See Solem, 463 U.S. at 292. Harmelin at least raised questions about the viability of
the Solem three-part test. In fact, it was subsequently held that proportionality survived Harmelin,
but that the Solem three-part test did not. See McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir.
1992); Dunn, 997 S.W.2d at 892; Lackey, 881 S.W.2d at 420-21. In light of Harmelin, the test has
been reformulated as an initial threshold comparison of the gravity of the offense with the severity
of the sentence, and then, only if that initial comparison created an inference that the sentence was
grossly disproportionate to the offense should there be a consideration of the other two Solem
factors--(1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same
crime in other jurisdictions. McGruder, 954 F.2d at 316; Mullins v. State, No. 06-06-00044-CR,
2006 Tex. App. LEXIS 10072, at *3 (Tex. App.--Texarkana Nov. 21, 2006, no pet. h.); Dunn, 997
S.W.2d at 892; Lackey, 881 S.W.2d at 420-21. 

 In this case, we cannot say the severity of the sentence is grossly disproportionate to the
gravity of the offense. First, Robert and Jeremy both testified that, once Sullivan took Robert's gun, 
he tried to aim and fire it at the Stovalls. Second, Robert suffered a torn ACL as a result of the
struggle with Sullivan--an injury requiring Robert to undergo surgery to repair the damage. Third,
Sullivan admitted to using drugs during the evening before trying to steal the A.T.V., and Hickey
testified that he thought Sullivan was still under the influence of methamphetamine at the time of
the arrest. Fourth, Sullivan's parole officer testified that Sullivan had been released from prison
approximately four months before committing the crime for which he was being tried. 

 Finally, and most persuasively, the State introduced evidence that Sullivan had been
previously charged and convicted of resisting arrest, burglaries of buildings, and felony theft. There
was additional evidence that Sullivan had another burglary charge, but that charge was dismissed
in exchange for Sullivan's guilty plea to another 1997 theft charge. (5) For one of the burglary
convictions, Sullivan had been sentenced to twenty years' imprisonment July 17, 1992, by the same
trial judge before whom the current trial was proceeding; yet before Sullivan had satisfied the
remainder of that sentence while on parole, he had committed several new felonies, including the
current aggravated robbery offense. In all, Sullivan stood convicted of six different crimes. 

 Given the specific facts regarding the severity of Robert's injuries as a result of being
assaulted, the testimony from both Stovalls that Sullivan tried to fire one of the guns at them, and
Sullivan's extensive criminal history including several new crimes committed while on parole, we
cannot say a life sentence is grossly disproportionate. Accordingly, we need not compare the
sentence assessed by the jury in the case with sentences imposed by juries in this or other
jurisdictions. We overrule Sullivan's final point of error.

 Finding no reversible error in the court below, we affirm the trial court's judgment.


 

 Josh R. Morriss, III

 Chief Justice


Date Submitted: January 24, 2007

Date Decided: January 25, 2007


Do Not Publish
1. There is no indication in the record before us that this person was ever identified or located.
2. See Tex. Code Crim. Proc. Ann. art. 36.15 (Vernon 2006) (requested special charges).
3. Such an offense is classified as a state-jail felony, which carries a lesser punishment than
aggravated robbery. See Tex. Penal Code Ann. § 31.03(a) (Vernon 2003), § 31.03(e)(4)(A)
(Vernon Supp. 2006).
4. Sullivan did not object to the sentence on the ground it was disproportionate to the crime,
or on any other ground, at the time it was imposed. His motion for new trial, however, contains a
contention that the sentence was disproportionate to the offense. A motion for new trial is an
appropriate way to preserve this type of claim for review. See Williamson v. State, 175 S.W.3d 522,
523-24 (Tex. App.--Texarkana 2005, no pet.); Delacruz v. State, 167 S.W.3d 904 (Tex.
App.--Texarkana 2005, no pet.).
5. As part of the plea agreement paperwork in connection with the 1997 crime, Sullivan made
a judicial admission that he committed the alleged burglary, but acknowledged the State would not
prosecute him for that crime in exchange for his guilty plea in a companion case.