**Faron TODD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–06–00252–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted Nov. 7, 2007.

Decided Nov. 16, 2007.

Discretionary Review Refused
March 19, 2008.

🔑1043(3)

Jeff Harrelson, Harrelson Law Firm, Texarkana, AR, for appellant.

Bobby Lockhart, Dist. Atty., Michael Shepherd, Asst. Dist. Atty., Texarkana, AR, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Justice CARTER.

A jury found Faron Todd guilty of four counts of aggravated sexual assault of a child and one count of indecency with a child. *See* TEX. PENAL CODE ANN. § 22.021 (Vernon Supp.2007), § 21.11 (Vernon 2003). The jury assessed Todd's punishment at sixty years' imprisonment on each count of aggravated sexual assault and twenty years' imprisonment for the sole count of indecency with a child.[1] Todd timely filed his motion for new trial, which was overruled by operation of law. *See* TEX.R.APP. P. 21.4, 21.8(c). Todd now appeals his convictions, raising eight issues. After hearing oral argument and considering the briefs in this case, we affirm Todd's convictions for the reasons set forth below.

## I. Excluding Specific Instances of Complainant's Past Sexual Behavior

In his second point of error, Todd contends the trial court reversibly erred by excluding evidence of the complainant's past sexual behavior. Pursuant to Rule 412 of the Texas Rules of Evidence, the trial court prohibited several attempts by Todd to offer such evidence. *See* TEX.R. EVID. 412.

### A. The Standard of Review

We review a trial court's decision to admit or exclude evidence for abuse of discretion. *Mozon v. State,* 991 S.W.2d 841, 846–47 (Tex.Crim.App.1999); *Sherman v. State,* 20 S.W.3d 96, 100 (Tex.App.-Texarkana 2000, no pet.). Such an inquiry necessarily depends on the facts of each case. *Sherman,* 20 S.W.3d at 100. While an appellate court may decide it would have ruled differently from the trial court on a particular evidentiary issue, such disagreement does not inherently demonstrate an abuse of discretion. *Manning v. State,* 114 S.W.3d 922, 926 (Tex.Crim.App. 2003). Instead, the appellate court may

---

1. In keeping with the parties' use of such on appeal, our opinion refers to the complainant using the pseudonym Angel Nicole (Angel). *See* TEX.CODE CRIM. PROC. ANN. art. 57.02 (Vernon Supp.2007).

only find an abuse of discretion when the trial court's decision "is so clearly wrong as to fall outside the zone of reasonable disagreement or when the trial court acts arbitrarily and unreasonably, without reference to any guiding rules or principles." *Reynolds v. State*, 227 S.W.3d 355, 371 (Tex.App.-Texarkana 2007, no pet.).

Generally, our rules favor admission of evidence that may be deemed relevant to the issues presented at trial. *See, e.g.*, TEX.R. EVID. 402. However, this general principle does not apply to evidence of the victim's past sexual behavior during a trial for sexual assault or aggravated sexual assault. TEX.R. EVID. 412. In such cases, our evidentiary rules take a contrary position by creating an extremely high hurdle over which the accused's proposed evidence must clear before a trial court may, in its discretion, admit such evidence. Specifically, our evidentiary rules state:

(b) ... In a prosecution for sexual assault or aggravated sexual assault, or attempt to commit sexual assault or aggravated sexual assault, evidence of specific instances of an alleged victim's past sexual behavior is also not admissible, unless:

(1) such evidence is admitted in accordance with paragraphs (c) and (d) of this rule;

(2) it is evidence:

(A) that is necessary to rebut or explain scientific or medical evidence offered by the State;

(B) of past sexual behavior with the accused and is offered by the accused upon the issue of whether the alleged victim consented to the sexual behavior which is the basis of the offense charged;

(C) that relates to the motive or bias of the alleged victim;

(D) is admissible under Rule 609; or

(E) that is constitutionally required to be admitted; and

(3) its probative value outweighs the danger of unfair prejudice.

(c) ... If the defendant proposes to introduce any documentary evidence or to ask any question, either by direct examination or cross-examination of any witness, concerning specific instances of the alleged victim's past sexual behavior, the defendant must inform the court out of the hearing of the jury prior to introducing any such evidence or asking any such question. After this notice, the court shall conduct an in camera hearing, recorded by the court reporter, to determine whether the proposed evidence is admissible under paragraph (b) of this rule. The court shall determine what evidence is admissible and shall accordingly limit the questioning. The defendant shall not go outside these limits or refer to any evidence ruled inadmissible in camera without prior approval of the court without the presence of the jury.

(d) ... The court shall seal the record of the in camera hearing required in paragraph (c) of this rule for delivery to the appellate court in the event of an appeal.

TEX.R. EVID. 412.

This Court has previously held that a trial court errs if the court excludes defensive evidence that might offer an alternative explanation for the State's medical evidence that suggests the victim had been sexually assaulted. *Reynolds v. State*, 890 S.W.2d 156, 157–58 (Tex.App.-Texarkana 1994, no pet.). But such contrary evidence (when offered by the defendant) must directly address—*and must clearly contradict*—the State's evidence. *See, e.g., Wofford v. State*, 903 S.W.2d 796, 799 (Tex. App.-Dallas 1995, pet. ref'd) (trial court

does not err by excluding evidence of victim's promiscuity with third parties unless those particular sexual activities are material to issue in case); *Rankin v. State*, 821 S.W.2d 230 (Tex.App.-Houston [14th Dist.] 1991, no pet.) (evidence alleged victim had engaged in oral sex not admissible; evidence did not impeach State's medical evidence on issue of vaginal penetration and referred only to conduct occurring after date of last offense with which defendant was charged); *Leger v. State*, 774 S.W.2d 99 (Tex.App.-Beaumont 1989, pet. ref'd) (evidence of other sexual conduct, such as victim's working as topless dancer, taking money for sex twice, and living with man to whom she was not married, could not be used to attack victim's credibility).

### B. The Charges Against Todd

The indictment against Todd contained five counts, which can be summarized as follows: (1) Todd caused Angel's anus to contact his penis on October 4, 2004; (2) Todd penetrated Angel's mouth with his sexual organ on July 15, 2004; (3) Todd penetrated Angel's anus with his sexual organ on April 1, 2004; (4) Todd penetrated Angel's sexual organ with his sexual organ on April 15, 2004; and (5) Todd caused Angel to touch his sexual organ on June 15, 2004. We will now turn to a comparison of the indicted charges and the State's evidence with the excluded evidence. Even though there is no challenge to the sufficiency of the evidence, a summary is provided to clarify the rationale for and the explanation of the questions raised regarding the excluded evidence of alleged past sexual behavior.

Angel testified that Todd made her touch his sexual organ with her hand, touched her sexual organ with his sexual organ, touched his penis to her "bottom," and put his penis inside her "bottom." He also penetrated her mouth with his penis. Vickie Hurst, a sexual assault nurse exam-iner, found evidence of a recent trauma to Angel's hymen at a location of four o'clock; this was further described as a notch. This notch had, in Hurst's opinion, occurred within the previous seventy-two hours. The location of this notch verified Angel's description that Todd was lying down with Angel on top and with her back to his face. Hurst also noted a well-healed scar at a location between eleven and twelve o'clock.

### C. The Excluded Evidence of Alleged Past Sexual Behavior

The excluded evidence can be grouped into several areas: (1) whether Angel had engaged in sexual conduct with her younger cousin, (2) whether Angel allowed one or more pets to play with her sexual organs, (3) whether Angel's mother had told one of her employees about fearing Angel would accuse a new boyfriend of molesting her, and (4) whether Angel's mother kept pornography in the home. We will now address each grouping of subject matter.

#### 1. The Alleged Sexual Conduct with Her Cousin

■ Todd sought to bring forth testimony via cross-examination of Angel, her mother (Jennifer), and through the direct testimonies of Samantha Lamon (Todd's older daughter), Todd himself, and Janice Eaglebarger (the mother of Angel's cousin), that Angel had previously engaged in sexual conduct with her younger cousin. This male cousin was two years younger than Angel, making him approximately nine years old at the time of Angel's abuse outcry. The trial court denied Todd's request to present evidence to the jury of an alleged sexual relationship between Angel and the younger cousin on the basis that such evidence was prohibited by Rule 412.

On the record before us, several reasons dissuade us from concluding the trial court abused its discretion by excluding such

testimony. First, Todd offered no evidence, whether direct or indirect, that any of the alleged sexual conduct between Angel and her cousin occurred within the seventy-two-hour period preceding Hurst's performing the sexual assault examination. Such evidence of recentness would be necessary in this case to link the conduct with the cousin to the evidence about the four o'clock notch noticed by Hurst, which Hurst described as having occurred most likely within the twenty-four-hour period preceding the examination. Without any evidence that the cousins had recently engaged in sexual relations, testimony about Angel's alleged other sexual relationships does not serve to explain, let alone rebut, the State's evidence regarding the more recent four o'clock notch.

Second, some of the proposed (but excluded) testimony did not serve to refute the State's evidence. Hurst had testified that the four o'clock notch on Angel's hymen was consistent with her facing away from the person who had penetrated her sexual organ. Lamon's excluded testimony suggested she had found the two children having sexual intercourse, but were facing each other during the alleged act. If such conduct had occurred, and if such conduct had resulted in scarring to Angel's hymen, the resulting scar would not, according to the logic of the testimony of Hurst, have been located at four o'clock. Therefore, Lamon's excluded testimony would not serve to refute the State's medical evidence regarding the cause of the more recent four o'clock notch to Angel's hymen. See TEX.R. EVID. 412.

Third, Todd offered no evidence, whether direct or indirect, that Angel's younger cousin, a mere child of no more than nine years of age, would have been physically capable of causing the older, eleven-to-twelve o'clock notch observed by Hurst on Angel's hymen. The trial court could have reasonably concluded such additional evidence would be necessary before the court could admit the evidence as a reasonable, alternative explanation for the State's medical evidence. Yet Todd offered no such additional evidence to link the cousin's physical capabilities with the medical evidence. Therefore, without more, we cannot say the trial court acted outside the wide zone of reasonable disagreement by excluding evidence of an alleged sexual relationship between Angel and this other presumptively prepubescent child. Cf. State v. Dudley, 223 S.W.3d 717, 724 (Tex. App.-Tyler 2007, no pet.) (trial court did not err by excluding questions about conduct when answers would not bear on whether sexual assault occurred).

## 2. The Pets

■ Todd also sought to ask Angel's mother, in the jury's presence, whether she had seen any inappropriate behavior between Angel and one or more pets. The trial court prohibited Todd from asking such questions in the jury's presence on the basis that the danger of unfair prejudice outweighed the probative value of any potential affirmative response.

We first note that Todd made no effort to offer evidence that allowing a pet to touch an eleven-year-old girl's sexual organ is capable of causing the type of hymenal scarring noted by Hurst to be present in Angel. Next, Todd offered no evidence of a time frame in which this alleged bestiality occurred, so as to allow the finder of fact to link that alleged conduct to Hurst's medical testimony. Finally, the trial court could have reasonably concluded the probative value of this evidence (if any) was outweighed by its likely prejudicial effect on the jury. Therefore, we cannot say the trial court acted outside the wide zone of reasonable disagreement in excluding this proposed evidence.

### 3. Telling an Employee She Feared Angel Might Falsely Accuse Her Mother's New Boyfriend

The trial court also prohibited Todd's trial counsel from asking Angel's mother whether she had told one of her former employees that she feared Angel might falsely accuse the mother's new boyfriend of sexually assaulting her. The trial court held such evidence was inadmissible under Rule 412; the trial court also opined that the probative value of the evidence was outweighed by its potential for unfair prejudice.

Angel's mother denied making such a statement. Todd has directed our attention to no testimony that was offered, either in the jury's presence or outside it, that suggests Angel's mother made such a statement to her former employee.

We believe the trial court's ruling was not outside the zone of reasonable disagreement for several reasons. First, even if Angel's mother had admitted making such a statement, such evidence would not serve to refute the State's medical evidence. Second, even if Angel's mother had admitted making such a statement, such an admission would not serve to directly contradict Angel's accusation against her stepfather. Third, the trial court could have reasonably concluded that the danger of unfair prejudice to the victim in this case by allowing defense counsel to ask this question in the jury's presence greatly outweighed the probative value of obtaining a denial from Angel's mother. Therefore, we cannot conclude the trial court's ruling on this issue constituted an abuse of discretion.

### 4. Pornography

Finally, Todd sought to ask Angel's mother whether she owned and/or watched pornographic videos in her home. The trial court prohibited Todd from pursuing this line of cross-examination in the jury's presence. The trial court held that, because there was no specific evidence Angel had herself ever viewed any such videos, the danger of unfair prejudice outweighed the probative value of such questioning. We agree. Therefore, we cannot say the trial court abused its discretion by prohibiting Todd from asking Angel's mother such questions on cross-examination.

## II. Not Granting Todd's Motion for New Trial

In his first point of error, Todd contends the trial court erred by not granting a new trial because Todd asserts the evidence shows two jurors in his case came in contact with other persons during a recess in the trial proceedings. We review a trial court's ruling on a motion for new trial for abuse of discretion. *Holden v. State*, 201 S.W.3d 761, 763 (Tex.Crim. App.2006). A trial court abuses its discretion in denying a motion for new trial "only when no reasonable view of the record could support the trial court's ruling." *Id.*

The record before us suggests two or more persons (who had been observing Todd's trial) were talking about the trial during a break in the proceedings. The substance of their conversation was that Todd was obviously guilty of the charges he faced. This conversation reportedly took place at a location near where two of Todd's jurors were also standing during the recess. Todd attached an affidavit to his motion for new trial from someone who also heard this at-issue conversation. The affidavit, signed by Elisa Reed (who was not a juror in Todd's case) states,

> I attended the trial of Faron Dwayne Todd. During a recess in the trial, several jurors went to an area of the courthouse where smoking is allowed to smoke cigarettes. On this outside porch, other persons who had been in

the courtroom observing the trial were also present smoking cigarettes. Two of the persons on the porch were verbally discussing their opinion that Faron Dwayne Todd was obviously guilty and sick. I was present when this conversation occurred[,] and I observed and overheard this discussion. I am sure the jurors did also. Someone in the hallway outside the courtroom saw this contact and began yelling[,] "Mistrial!". The court's bailiff was notified of this contact with jurors[,] and he separated the jurors from the other persons on the porch. I also heard other trial observers yelling[,] "Child molester!" in the hallway during this time.

Todd now asserts this affidavit from Reed provides sufficient evidence to necessitate the granting of Todd's motion for new trial.

■ As a prerequisite to complaining about a trial court's failure to grant a motion for new trial, the appellate record must demonstrate both that a motion for new trial was filed and that the appellant took the additional step of presenting this motion to the trial court. TEX.R.APP. P. 21.6; *Rozell v. State*, 176 S.W.3d 228, 230 (Tex.Crim.App.2005). This presentment requirement "is satisfied when the movant 'actually deliver[s] the motion for new trial to the trial court or otherwise bring[s] the motion to the attention or actual notice of the trial court.'" *Coronado v. State*, 25 S.W.3d 806, 810 (Tex.App.-Waco 2000, pet. ref'd) (quoting *Carranza v. State*, 960 S.W.2d 76, 79 (Tex.Crim.App.1998)).

In this instance, the trial court never entered an order regarding the motion; it was simply overruled as a matter of law. The record in this case does not otherwise affirmatively demonstrate Todd presented his motion for new trial to the court below. Accordingly, he may not now complain the trial court abused its discretion by allowing Todd's motion for new trial to be overruled by operation of law.

### III. Permitting an Investigator to Testify DFPS Had "Reason To Believe"

■ In his third appellate issue, Todd contends the trial court erred by allowing an investigator for the Texas Department of Family and Protective Services (DFPS) to testify her office had "reason to believe" Angel's allegations of being sexually assaulted by Todd. As stated previously, we review a trial court's decision to admit or exclude evidence for abuse of discretion. *Menefee v. State*, 211 S.W.3d 893, 902 (Tex. App.-Texarkana 2006, pet. ref'd). However, an appellate court may consider evidentiary challenges on appeal only when those issues were properly raised and presented before the trial court. TEX.R.APP. P. 33.1; *Montanez v. State*, 195 S.W.3d 101, 104 (Tex.Crim.App.2006); *Runnels v. State*, 193 S.W.3d 105, 107–08 (Tex.App.-Houston [1st Dist.] 2006, no pet.).

The challenged testimony comes from Investigator Sharonda Mack. Immediately before Mack's testimony which is now under attack, she was cross-examined by Todd's attorney who commented that Mack had used the phrase "alleged victim" when referring to the child. The following exchange then occurred between defense counsel and Mack:

Q [By Todd's attorney] You're not doing or responsible for any criminal conclusions, are you?

A [By Mack] No, sir.

On re-direct, the following exchange took place in the jury's presence:

Q [By the State] What was the conclusion of your investigation?

A [By Mack] It was reason—.

[By Todd's attorney]: Object to that as irrelevant to this proceeding, Your

Honor. She's making an attempt based on a question like that in a criminal court of law to put herself in the place of the trier of fact. We're not here to analyze a CPS case.

[By the State]: Your Honor, may we approach?

THE COURT: Well, I don't know that we need to. I'm going to allow the question. However, this is just the basis of her conclusion. Of course, this jury will make the final determination. You may answer the question.

Q [By the State] What was the conclusion of your investigation for the department?

A [By Mack] Reason to believe.

[By the State]: Pass the witness.

[By Todd's attorney]: I'm sorry. I just didn't hear. Would you repeat that?

A [By Mack] Reason to believe.

[By Todd's attorney]: We would again renew our objection, Your Honor, and move for a mistrial.

THE COURT: Overruled.

The objection raised by Todd at trial concerned the relevancy of Mack's testimony. Relevancy is covered by Rule 402 of the Texas Rules of Evidence. The objection now raised by Todd on appeal asserts that, because Mack was not offered or certified as an expert witness on the issue of victim credibility, her lay opinion is not admissible about an ultimate fact to be decided by the jury. The appropriateness of expert testimony is governed by Rule 702 of the Texas Rules of Evidence. Tex.R. Evid. 702. The issue now being raised on appeal was not first presented in the court below. Accordingly, this issue has not been preserved for appellate review.

■ Further, based on the sequence of events presented above, it appears the State was responding to a subject (the investigator reaching conclusions) originally opened by the cross-examination of Mack. Moreover, even if this issue had been preserved, considering the greater context in which Mack's statement was made, we would not conclude the trial court's ruling was outside the wide zone of reasonable disagreement.

## IV. Issues 4–7: Ineffective Assistance of Counsel

In his final four issues, Todd contends he received ineffective assistance of counsel because the defense attorney (a) "failed to request a hearing on the fact that jurors had contact with trial observers during a recess in the trial"; (b) "failed to call a witness, who was subpoenaed and present at the courthouse, to rebut certain claims made by a State's witness"; (c) "failed to move for a directed verdict of acquittal"; and (d) "failed to cross[-]examine a State's witness about other possible causes of the complainant's trauma."

■ There are many problems attendant to raising a claim of ineffective assistance claims on direct appeal. As we recently observed,

When, as here, ineffective assistance is raised on direct appeal, appellate counsel and the court must proceed on a trial record not developed for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose. *Freeman v. State,* 125 S.W.3d 505, 506 (Tex.Crim.App.2003); *cf. Massaro v. United States,* 538 U.S. 500, 504–05, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003). Nonetheless, some claims may be disposed of on direct appeal where "trial counsel's ineffectiveness is so apparent from the record." *Massaro,* 538 U.S. at 508, 123 S.Ct. 1690; *Freeman,* 125 S.W.3d at 506; *see also Andrews v. State,* 159 S.W.3d 98, 103 (Tex.

Crim.App.2005); *Thompson v. State,* 9 S.W.3d 808, 814 n. 6 (Tex.Crim.App. 1999). "[W]hen no reasonable trial strategy could justify the trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as she did." *Andrews,* 159 S.W.3d at 102. A claim of ineffective assistance of counsel, on an undeveloped record on direct appeal, should, nonetheless, "be entertained and upheld if supported by the record." *Fuller v. State,* 224 S.W.3d 823, 828–29 (Tex.App.-Texarkana 2007, no pet.) (footnote omitted); *see also Oldham v. State,* 977 S.W.2d 354, 360 (Tex.Crim.App.1998). If the record on direct appeal is inadequate, habeas corpus is the more appropriate avenue for developing the record on this issue. *Moore v. State,* 227 S.W.3d 421, 426 n. 1 (Tex.App.-Texarkana 2007, pet. ref'd). Moreover, if the appellate court can imagine a strategic motive to explain the ineffective assistance claim, then the reviewing court may not sustain the appellant's point of error. *Freeman,* 125 S.W.3d at 511 (citing *Bone v. State,* 77 S.W.3d 828, 833 n. 13 (Tex.Crim.App. 2002)).

### A. Failure to Request a Hearing to Have Jurors Testify

■ Initially, Todd contends his trial counsel provided ineffective assistance by failing to request a hearing on the motion for new trial; at this hearing, Todd asserts, his trial counsel should have sought to call the jurors in his case to testify about the impact of the inappropriate conversation allegedly overheard by those jurors during a trial recess.

The record before us contains no explanation from Todd's trial counsel as to why he did not request a hearing before the trial court. We can, however, imagine a strategic explanation: it is possible Todd's counsel had already informally interviewed those jurors and come to the conclusion that the allegedly inappropriate conversation was either not heard by the jurors or had no impact on the jury's deliberations. Under such a circumstance, it would not amount to ineffective assistance to request a hearing for the trial court to consider evidence that would only refute Todd's claim of improper influence of the jury.

Because we can envision a reason to explain trial counsel's allegedly inappropriate service, we cannot sustain Todd's claim on this basis.

### B. Failing to Call a Witness to Testify at Trial

■ Todd next contends he received ineffective assistance because his trial attorney failed to call Keisha Ward to testify; Todd now asserts Ward was present at the courthouse and could have rebutted the testimony of Jennifer Todd, his former wife. Todd filed an affidavit from Ward in connection with his motion for new trial. That affidavit, in its entirety, states:

> My name is Keisha Ward. I am over the age of 18 and fully competent to make this affidavit. I was subpoenaed by the State of Texas to testify at the trial of Faron Dwayne Todd. I had also spoken [to] Mr. Todd's attorney, or his agent, about testifying as a defense witness, but I was not subpoenaed by the defense. I was present during the trial, but remained outside the courtroom. I possessed information which I think would have been helpful to the defense, but I was never called as a witness by either party, and thus, never testified at the trial.
>
> FURTHER AFFIANT SAYETH NOT.

Ward's affidavit makes clear that she had spoken to Todd's trial attorney, or the attorney's agent, before trial. Without direct evidence from the trial attorney to the contrary, this Court must presume Todd's trial counsel had a strategic reason for not calling Ward. *See, e.g., Melancon v. State,* 66 S.W.3d 375, 378–81 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd) (en banc). For example, it is possible counsel had adjudged Ward's testimony not to be of material value to Todd's defense because Ward lacked personal knowledge of the events about which she planned to testify. *See, e.g.,* Tex.R. Evid. 802 (prohibiting admission of hearsay).

### C. Failure to Move for a Directed Verdict of Acquittal

 Todd next contends his trial counsel provided ineffective assistance because counsel failed to move for a directed verdict of acquittal. A motion for a directed verdict of acquittal is a challenge to the legal sufficiency of the evidence; if such a challenge is sustained, it results in the immediate dismissal of the charges against the accused. *See Yarborough v. State,* 178 S.W.3d 895, 903 (Tex.App.-Texarkana 2005, pet. ref'd). It is possible Todd's trial counsel, having heard all the State's evidence, realized the testimonies of Angel and Hurst by themselves provided legally sufficient evidence, if believed, to support a judgment of conviction. Such a rationalization for not moving for a directed verdict would reasonably explain trial counsel's alleged shortcoming on this issue.[2]

### D. Failure to Cross–Examine Hurst About Other Possible Causes of Angel's Trauma

2. In a criminal trial, it is not necessary to present a motion for a directed verdict in order to challenge the sufficiency of the evidence on appeal. *See Moff v. State,* 131

Finally, Todd contends his trial counsel provided ineffective assistance because counsel failed to ask Hurst about other possible causes for the trauma to Angel's hymen.

The record before this Court does not contain any testimony, via a hearing or an affidavit, from Todd's trial counsel about his decision to not explore every last alternative hypothesis for how the victim's hymen might have sustained the more recent four o'clock notch or the less recent eleven-to-twelve o'clock notch.

Under most circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the strong presumption that counsel's conduct was reasonable and professional. *Bone,* 77 S.W.3d at 833. As this Court recently explained, rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation: "[i]n the majority of cases, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel." *Id.* A reviewing court can frequently speculate on both sides of an issue, but ineffective assistance claims are not built on retrospective speculation; rather, they must "be firmly founded in the record." *Id.*

From the information available to us, we can only speculate as to why counsel acted or failed to act as they did. *Id.; Ex parte Torres,* 943 S.W.2d 469, 475 (Tex.Crim.App.1997); *Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App. 1994). Without more, we must presume that counsel acted pursuant to a reasonable trial strategy. *Id.*

S.W.3d 485, 488 (Tex.Crim.App.2004) (citing *Rankin v. State,* 46 S.W.3d 899, 901 (Tex. Crim.App.2001)).

*Scheanette v. State,* 144 S.W.3d 503, 510 (Tex.Crim.App.2004).

In the case now before this Court, Todd's trial counsel could have had a strategic reason for not exploring the additional potential causes of the recent trauma to Angel's hymen that Todd now raises on appeal. The record does, however, show defense counsel pursued this line of questioning to a limited extent—but did so with absolutely no success. Given that we must presume counsel had a strategic reason for discontinuing this line of questioning, we cannot sustain this claim of ineffective assistance.

## V. Conclusion

The record before us does not support Todd's claims of ineffective assistance of counsel. Todd's failure to present his motion for new trial precludes appellate review of that motion being overruled by operation of law. And the record before us does not demonstrate the trial court abused its discretion regarding its decisions to admit or exclude the complained-of evidence.

We affirm the judgments.