

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-07-00122-CR

_____

DOSHEE SWAN TOWERY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd Judicial District Court
Bowie County, Texas
Trial Court No. 07F0058-102

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

O P I N I O N

A Bowie County jury found Doshee Swan Towery (referred to as Defendant) guilty of the murder of Phillip Stanley, *see* TEX. PENAL CODE ANN. § 19.02(b)(1) (Vernon 2003), and assessed punishment at fifty years' imprisonment. The trial court entered judgment on the verdict. We affirm that judgment.

During the trial, the State introduced evidence that the Defendant, while in jail awaiting trial, had handwritten the date of Stanley's murder and the words "forgive me" over a passage in his jailhouse Bible:

> He that smiteth a man, so that he die, shall be surely put to death.
> And if a man lie not in wait, but God deliver him into his hand; then I will appoint thee a place whither he shall flee.

*Exodus* 21:12–13 (King James). Towery trusts that he has now found a way to the place whither he may flee: the trial judge's apparently inadvertent written grant of Towery's motion for directed verdict of acquittal prior to receipt of the jury's verdict.

The Defendant urges three points of error: (1) that the court had no jurisdiction to impliedly vacate the grant of acquittal, submit the charge to the jury, and enter judgment on the guilty verdict because, he asserts, jeopardy attached at the moment of acquittal and the court lost jurisdiction to subsequently enter judgment on a guilty verdict; and (2) that his right as a defendant to a fair trial

2

was violated under the Federal and Texas Constitutions[1] when the jury was tainted by a dismissed juror's comment.

## I.  FACTS

The evidence of the Defendant's guilt is convincing.

A heated dispute between the Defendant and Stanley (who knew each other through past drug dealings) came about because the Defendant's younger brother insulted Stanley's girlfriend. Witnesses saw the Defendant shoot Stanley three times and kill him, and then flee in his car. While fleeing, the Defendant had an automobile collision; witnesses at the scene of the accident saw him toss a gun from his car. Ballistics testing matched the gun thrown from the car to the bullets that killed Stanley. At trial, the Defendant's defense posture was that another person had shot Stanley and then placed the gun in the Defendant's automobile.

## II.  FIRST POINT OF ERROR:  ENTRY OF DIRECTED VERDICT

A written motion for directed verdict was filed with the court on March 20, 2007, along with seventeen other motions, most of which concerned discovery.[2] At the June 25 pretrial hearing, the court reviewed discovery issues with the parties. At that time, the trial court commented that "the only motions that are still pending before this Court, there is what we call a motion in limine. . . .

---

[1]The federal and state claims were raised under separate points of error.

[2]Thirteen of these motions involved discovery matters, but the motions also included a motion to poll the jury, motion for jury list, motion to invoke witness rule, and motion to shuffle jury panel.

3

All right, gentlemen, are there any other motions?" The State responded that it would present a formal motion in limine. The court then stated to defense counsel:

> your motion -- you had the prefix [sic] motion that was presented. If you will confer with [the State] those matters that can be agreed upon, I want those removed from the case. And likewise, the only thing I'll be interested in hearing are those issues in controversy that I need to make a ruling on.

The Defendant consented and both sides indicated they had no further motions to present.

At some point on June 25, the trial judge signed orders granting thirteen of the motions filed by the Defendant on March 20: nine discovery motions and four nondiscovery motions.

The following day, before beginning voir dire, the trial court inquired of the parties if there were any motions that needed resolution before commencing. The State responded by presenting a motion in limine and addressing several of the Defendant's discovery motions and the Defendant's motion for continuance. The Defendant agreed that the State had provided all requested discovery and commented, "I do have a number of motions that have attached orders to them. For the purpose of the record I would request that the Court sign those orders, indicating that they have been granted, and make those a part of the record." The court responded, "All right."

The Defendant then responded to the State's motion in limine; the court granted that motion, after which the following exchange occurred:

> [Defense Counsel]: And for purposes of this hearing I do have all of my motions and the proposed orders.
>
> THE COURT: All right.

[Defense Counsel]: I would submit that to the Court now, and respectfully request, based upon what the State has represented and what the State has done, that they all are in fact granted, based upon what has been produced to the defense.

THE COURT: All right. Anything further, gentlemen?

Following this exchange, the Defendant argued for a continuance, which was denied.

### A.    *Trial*

After the June 25 exchange, voir dire was conducted; the case-in-chief began the next day and continued through the following day. After a lunch break on June 27, outside the presence of the jury, and after the State had indicated it would have no more witnesses but had not yet rested, the following exchange occurred:

[Defense Counsel]: . . . after the State rests, then the defense would have a motion to make, and would like to call the defendant outside the presence of the jury concerning whether he intends to testify or not.

THE COURT: All right, let's call him right now. The record is going to reflect that your motion is timely presented.

[Defense Counsel]: All right. My motion would be for an instructed verdict.

THE COURT: You have reduced to writing such a motion.

[Defense Counsel]: Yes, I have.

THE COURT: And I do have the written motion, as well.

[Defense Counsel]: All right, sir.

5

THE COURT: So it is of record.

[Defense Counsel]: Thank you, Your Honor.

THE COURT: What I will do is put it in the proper sequence when the State rests.

Once the jury returned from lunch, the State rested and there was no further mention of the motion for directed verdict. On this same date, the defense put on its case, the jury was charged, and arguments were presented; the jury retired to consider its verdict, deliberating about two hours, after which the jurors were recessed for the night.

However, at some point in time on June 27, the trial judge signed an order which purported to grant the Defendant's motion for a directed verdict, the order specifically stating that the motion was heard on that day and ordering the entry of a finding of not guilty. No other orders dated June 27 were entered. The jury resumed deliberation on June 28 and returned with a finding of guilty.

The trial then went into the punishment phase. Evidence was taken, arguments were made, a charge was presented to the jury, and the jury assessed punishment at fifty years' confinement and a fine of $10,000.00. On June 28, the trial judge signed the judgment of conviction.

### B. Post-Verdict

All of the thirteen orders which had been signed June 25, together with the order granting a directed verdict dated June 27, were filed with the clerk on June 28, between 4:34 and 4:37 p.m.[3]

---

[3]Also file-stamped at that time is an order granting the State's motion in limine, though it does not indicate a date on which it was signed.

6

After briefing had been submitted in this appeal (after the trial court had lost its plenary power over the case), the trial court forwarded a supplemental clerk's record containing Judge John Miller's January 22, 2008, letter to the trial court clerk. In that letter, Judge Miller asserted that the grant was inadvertent. At that point, the only "correction" or retraction of the order granting an instructed verdict of acquittal contained in the appellate record was this letter. As a result, as the record then existed, it contained conflicting judgments: the order of acquittal and the judgment of conviction.

In considering the means to resolve this very apparent conflict, we turned to Rule 44.4, which provides:

> (a)     *Generally*. A court of appeals must not affirm or reverse a judgment or dismiss an appeal if:
> (1)     the trial court's erroneous action or failure or refusal to act prevents the proper presentation of a case to the court of appeals; and
> (2)     the trial court can correct its action or failure to act.
> (b)     *Court of Appeals Direction if Error Remediable*. If the circumstances described in (a) exist, the court of appeals must direct the trial court to correct the error. The court of appeals will then proceed as if the erroneous action or failure to act had not occurred.

TEX. R. APP. P. 44.4. The more common application of this rule is when a trial court has refused to provide factual findings or hear some kind of evidence (e.g., not hold a *Batson*[4] hearing or accept defendant's offer of proof) so that the record may be perfected before proper review may be had. *See LaPointe v. State*, 225 S.W.3d 513, 521 (Tex. Crim. App. 2007). But, in a recent case, the Texas Court of Criminal Appeals applied Rule 44.4 to abate a case in which the trial court had both granted

---

[4]*Batson v. Kentucky*, 476 U.S. 79 (1986).

7

defendant's motion for new trial and certified defendant's right to appeal. *See Taylor v. State*, 247 S.W.3d 223, 224 (Tex. Crim. App. 2008). In *Taylor*, the court determined that the appeal must be abated and the trial court ordered to clarify which action was intended. *Id.*

### C.    *Case Abated*

Faced with the conflicting orders of acquittal and conviction, this Court abated the matter on May 28 and returned it to the trial court for the purpose of having the trial court address the circumstances surrounding the presentation and signing of the directed order of acquittal and the date and approximate time of the entry of that order. The abatement order also directed the trial court that if the instructed verdict of acquittal had been entered through mistake or inadvertence, it was to correct the record so that it reflected the truth of the matter, after which a supplement to the record would be returned to this Court.

In response to the order of abatement, the trial court held a hearing on May 22, 2008, and, as a result of that hearing, the trial court entered its "Order Nunc Pro Tunc" dated June 4, 2008. That nunc pro tunc order makes a finding that the June 27, 2007, order for instructed verdict had been granted incorrectly through clerical error; it then proceeds to correct the order dated June 27, 2007, nunc pro tunc to reflect the motion for instructed verdict as being "denied."[5] The trial court's order then reiterates the correctness of the judgment of conviction dated July 9, 2007.

---

[5]The order incorporates by reference an order in the same form which had previously granted the instructed verdict in which the trial court interlineated the words "Granting" and "granted" and manually replaces them with "Denying" and "denied"; the trial court then struck through the paragraph entering a finding of not guilty.

### D. *Analysis*

#### 1. STANDARD OF REVIEW

The question of whether a person has been acquitted is a question of law. *See Smith v. Massachusetts*, 543 U.S. 462, 468–69 (2005); *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977). An acquittal occurs when a ruling, whatever its label, actually resolves, in defendant's favor (whether correctly or not) some or all of the factual elements of the offense charged. *Martin Linen Supply*, 430 U.S. at 571.

#### 2. OVERVIEW OF DIRECTED VERDICTS

"No person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction." TEX. CONST. art. I, § 14; *see also* U.S. CONST. amend. V; TEX. CODE CRIM. PROC. ANN. art 1.10 (Vernon 2005). The federal Double Jeopardy Clause "prohibits reexamination of a court-decreed acquittal to the same extent it prohibits reexamination of an acquittal by jury verdict." *Smith*, 543 U.S. at 467.

The one exception to this rule against reexamination, in the federal scheme, is the government's ability to appeal a post-guilty-verdict directed acquittal for reinstatement of the jury's verdict. *Id.* But in Texas, an acquittal from the grant of a directed verdict is not an order from which the State has an appeal; it is "well settled that a verdict of acquittal can not be reviewed regardless of how egregiously wrong the verdict may be." *State v. Moreno*, 807 S.W.2d 327, 332 n.6 (Tex.

9

Crim. App. 1991) (citing *United States v. Sisson*, 399 U.S. 267, 289–90 (1970) (acquittal through directed verdict)).

However, this rule against reexamination only applies to acquittals that are in fact final. *See Smith*, 543 U.S. at 470.[6] A mid-trial acquittal may be nonfinal if nonfinal treatment has been "plainly established by pre-existing rule or case authority expressly applicable to midtrial rulings on the sufficiency of the evidence." *Id.* at 473. The Court noted that some states do not accord finality to directed verdicts of acquittal until signed and entered in the docket (Georgia), until a formal order is issued (Washington), or until completion of the hearing (Florida). *Id.* at 471. The Court held that if, "after a facially unqualified midtrial dismissal of one count, the trial has proceeded to the defendant's introduction of evidence, the acquittal must be treated as final" unless the pre-established state law statute, rule, or case provides otherwise. *Id.* at 473.

In Texas, there is no such statute, rule, or case. Indeed, there is no statutory procedure even governing a directed verdict of acquittal in most criminal matters. *But see* TEX. CODE CRIM. PROC. ANN. art. 38.17 (Vernon 2005) (where requirement of two witnesses, or one witness plus corroboration, is not fulfilled, "the court shall instruct the jury to render a verdict of acquittal, and

---

[6]In *Smith*, the United States Supreme Court considered whether a trial judge may reconsider, before closing arguments, a ruling of acquittal made at the close of the State's case on one of the three charges for which defendant was being tried. *See Smith*, 543 U.S. at 464. The trial court orally granted defendant's oral and written motion for directed verdict made at the close of the State's case; the judge made a written grant on the written motion. *Id.* at 465. After the defendant had rested, and on the State's motion, the court "reconsidered" its earlier ruling (including doing so in writing) and allowed that count to go to the jury. *Id.* at 465–66.

10

they are bound by the instruction"); *and see* TEX. CODE CRIM. PROC. ANN. art. 1.27 (Vernon 2005) (where code does not provide rule of procedure, common law shall be applied and governs). Without a "plainly established" and "expressly applicable" rule allowing reconsideration of a directed acquittal, it appears that, in Texas, if one considers *Smith* to be controlling, a mid-trial acquittal may not be reconsidered.

But the court's holding in *Smith* is distinguishable on two grounds: (1) it addresses a *partial* acquittal; and (2) it rests on a principle not applicable here: reliance. *See Smith*, 543 U.S. at 472–73. That is, that double jeopardy must bar reconsideration of the acquittal because a defendant relies on the acquittal on one count in the way he presents his evidence on the remaining counts. Here, the record contains no indication that anyone—Defendant, State, or the court itself—was aware the acquittal had been granted, let alone relied on.

Indeed, the Court stated, "Double-jeopardy principles have never been thought to bar the immediate repair of a genuine error in the announcement of an acquittal." *Id.* at 474. This Court has previously stated in dicta that an acquittal by directed verdict is immediate. *See Todd v. State*, 242 S.W.3d 126, 136 (Tex. App.—Texarkana 2007, pet. ref'd); *see also* TEX. CODE CRIM. PROC. ANN. art 37.12 (Vernon 2006). As a general rule in Texas, an acquittal through directed verdict is immediate, is accorded finality, and renders the question of guilt no longer at issue. *See Sisson*, 399 U.S. at 289–90; *Moreno*, 807 S.W.2d at 332 n.6; *Todd*, 242 S.W.3d at 136.

11

We note, then, that if the act of signing the judgment of acquittal was indeed effective, the remaining part of the trial (wherein the Defendant was found guilty and sentenced) would be a nullity.

Although we have found no Texas authority directly on point regarding directed verdicts of dismissal, other jurisdictions have wrestled with similar issues. An intermediate appellate court in Maryland held that the trial court's inadvertent (and almost immediately corrected) oral grant of a directed verdict on one of three charged counts was simply a "slip of the tongue" that did not result in "actual resolution of the sufficiency issue" and did not, therefore, implicate double jeopardy. *Allen v. State*, 850 A.2d 365, 372 (Md. Ct. Spec. App. 2004).  On the other hand, also in Maryland, that state's high court held that where judicial reasoning was articulated in support of the entry of acquittal,[7] no matter how incorrect, and no matter how immediately reconsidered, double jeopardy had attached. *Pugh*, 319 A.2d at 545.  The court noted that "where a judge 'obviously inadvertently' says one thing when he means something else, and immediately thereafter corrects himself, a 'verdict' would not be rendered for purposes of . . . double jeopardy." *Id.* (finding that judge's statement of reason for ruling indicated it was not inadvertent).  The court stated that "[o]nce a trial judge *intentionally renders* a verdict of 'not guilty' on a criminal charge, the prohibition against double jeopardy does not permit him to change his mind." *Id.* (emphasis added).

_____

[7]In a trial to the court (not jury), the judge, after hearing evidence, orally ruled, "Guilty in 2110, and not guilty in 2111.  I don't think it's in sufficient quantity." *Pugh v. State*, 319 A.2d 542, 543 (Md. 1974).  Immediately on hearing the ruling, the State referenced certain evidence and the court immediately thereafter changed its ruling.

12

### 3. CLERICAL ERROR VERSUS JUDICIAL ERROR

One must first determine if there was, indeed, a genuine instructed verdict of acquittal entered. It appears that the process of the exercise of judicial determination by the judge is the primary defining issue in such a circumstance. There are other circumstances in which Texas courts have examined the subsequent withdrawal of other orders in criminal trials.

The action of the grant of a new trial after conviction was the subject of what was once a touchstone case in Texas. In *Matthews v. State*, 40 Tex. Crim. 316, 50 S.W. 368 (1899), the defendant had been convicted of cattle theft. The trial court first signed an order granting a new trial and then, on the same day, rescinded the order and reinstated the previous order, observing within the order that the new trial had been granted because the judge was "under a misapprehension of the evidence complained of by defendant in his motion." *Id.* at 368. The Texas Court of Criminal Appeals determined that the act of granting of a new trial "ought to be regarded as final . . . the court would have no authority, after he had granted the motion for new trial, afterwards, on the same day or on some other day of the term, to again call the case up, set the order aside granting the motion, and overrule it." *Id.* at 369.

*Matthews* remained guiding authority on the ability of a trial judge to supersede a previously-granted motion for new trial for over eighty years, when a slightly different circumstance arose in *English v. State*, 592 S.W.2d 949 (Tex. Crim. App. 1980). In *English*, a visiting judge who had not presided over the trial entered an order granting a new trial. Then, three days later, the visiting judge

wrote on the face of the order that it had been signed "inadvertently and by mistake and the order was not intended to have any legal effect." *Id.* at 955. At a hearing presided over by the regular trial judge, the visiting judge testified that (1) the order granting the new trial had been included among a group of other documents presented to him while he was on the bench, (2) he knew nothing of the case, (3) he did not intend to grant a new trial, (4) there had been no hearing on the motion for new trial, and (5) he did not comprehend the effect of what he had signed. The Texas Court of Criminal Appeals upheld the regular judge's order rescinding the order for new trial, distinguishing it from *Matthews* on the basis that in *Matthews*, the judge had considered the merits of the motion for new trial, granted it, and then reconsidered that course of action; in contrast, the judge in *English* had made no judicial decision and the order had simply been signed in error. The court then distinguished a "judicial error" from a "clerical error" which involved no judicial decision-making. Although the rationale in *Matthews* has been subsequently specifically disavowed,[8] the distinction made by the Texas Court of Criminal Appeals between the change of a rational decision described in *Matthews* and the entry of an order in error, lacking a judicial determination, in *English* is an important factor in a review of inadvertence in the entry of an order. This inquiry as to the quantity of judicial reasoning employed by the judge when signing an order granting a new trial (i.e., the signed order being the written evidence of the judicial intent) appears to be the important factor to consider.

---

[8]*Awadelkariem v. State*, 974 S.W.2d 721, 728 (Tex. Crim. App. 1998) ("[T]he *Matthews* rule, having always rested on questionable foundations, is no longer viable . . . .").

14

It is possible to draw a distinction between the erroneous grant of a motion for new trial and the entry of an instructed verdict of acquittal because if a valid instructed verdict of acquittal occurs, the case is over. Once there is an acquittal, the case no longer exists and, under the circumstances of this case, if there was a valid judgment of acquittal, jeopardy would attach.

Absent the application of the protection against double jeopardy, a closer analogy to our situation may be in the quashing of an indictment; after an indictment is quashed, there are then no charges existing against a defendant. It has been determined that the entry of a written order quashing an indictment could be corrected by the entry of a nunc pro tunc order overruling a motion to quash the indictment if the original order was entered as the result of clerical error. *Jiminez v. State*, 953 S.W.2d 293 (Tex. App.—Austin 1997, pet. ref'd). It should be noted, however, that a record must be made at the trial level that a clerical error had been made in the entry of a written order to quash an indictment and that such a determination cannot be inferred from the subsequent actions of the parties in proceeding to trial nor from later oral orders denying such a motion to quash. *Rodriguez v. State*, 42 S.W.3d 181, 186 (Tex. App.—Corpus Christi 2001, no pet.).

Both the State and the Defendant cite *State v. Stanley*, 201 S.W.3d 754 (Tex. Crim. App. 2006), as controlling; the Defendant places great reliance on a sentence from it: "Thus, if the order that the trial court entered in this cause constituted an acquittal, even if erroneously, then the State may not appeal it." *Id.* at 759. The Defendant maintains that once the order for a directed verdict

15

was signed, acquittal was *fait accompli* and all else which took place after that time regarding the trial and the charges were for naught.

That sentence, taken out of context from *Stanley*, presumes that a valid order is entered. In *Stanley*, the defense had repeatedly urged that a city ordinance prohibiting unlawful assembly which underlaid the charges was unconstitutionally vague; the trial court, after consideration of the order, concurred and dismissed the charges. There is nothing in *Stanley* to hint that the written order of dismissal was the product of any clerical error but, rather, was the considered opinion of the trial judge. The words, "even if erroneously" as employed by the Texas Court of Criminal Appeals in *Stanley* refers to the possible erroneous application of legal principles by the judge, not to an accidental entry of an order incorporating an unintended result (i.e., not the product of judicial reasoning). In other words, the word "erroneously" makes reference to the judicial decision upon which the ruling was based; it does not make reference to the rote act of signing the order.

A written order monuments, formalizes, and preserves the record of a judicial determination; it is intended to monument the judicial decision made at the time of its entry. When a trial judge acts pursuant to a false or mistaken conception or application of the law, such is "judicial error," not "clerical error." *Ex parte Williams*, 704 S.W.2d 773 (Tex. Crim. App. 1986). In contrast to a judicial error, a clerical error is one that did not come about as the product of judicial reasoning or determination and is subject to being corrected. *Ex parte Poe*, 751 S.W.2d 873, 876 (Tex. Crim. App. 1988); *Alvarez v. State*, 605 S.W.2d 615, 617 (Tex. Crim. App. [Panel Op.] 1980). The

16

determination as to whether an error is clerical or judicial is a question of law, and a trial court's finding or conclusion in this regard is not binding on an appellate court. *Alvarez*, 605 S.W.2d at 617; *Fanniel v. State*, 73 S.W.3d 557, 559 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *Smith v. State*, 801 S.W.2d 629, 633 (Tex. App.—Dallas 1991, no pet.).

This clerical error was corrected by the entry of the nunc pro tunc order entered by the trial court after abatement. "[C]orrection [by the entry of a nunc pro tunc order] can be only as to what was done and not as to what should have been done." *Ex parte Dopps*, 723 S.W.2d 669, 670 (Tex. Crim. App. 1986) (quoting *Villarreal v. State*, 590 S.W.2d 938, 939 (Tex. Crim. App. 1979); *Chaney v. State*, 494 S.W.2d 813, 814 n.1 (Tex. Crim. App. 1973)).

It is axiomatic that the phrase "nunc pro tunc" means "now for then." *State v. Bates*, 889 S.W.2d 306, 309 (Tex. Crim. App. 1994). What is there in the record that actually shows what took place during the trial? The exchange between the trial judge and defense counsel concerning the proper timing of the filing of the motion for instructed verdict took place after the State had presented its last witness at the guilt/innocence stage, but before it actually rested. The record reflects that after explaining to the court that the defense had a motion for instructed verdict to present, the trial court stated that it had the written motion and stated, "So it is of record. . . . . What I will do is put it in the proper sequence when the State rests." The record contains no oral account of the judge's ruling, but on that same day this exchange occurred, the trial judge signed an order purporting to grant the instructed verdict. However, the events that transpired following the

17

presentation of the motion and the court's signing of an order conclusively show that the judge actually denied the motion for instructed verdict, but inadvertently signed an improper order.

Immediately after the motion was presented and on the same day that it was ruled on, the trial continued. At the guilt/innocence stage, the defense presented its evidence, the jury was charged, final arguments were presented, and the jury deliberated for approximately two hours before being recessed for the night. The jury returned the next day (June 28), resumed deliberations, and returned a verdict of guilt. The punishment trial was then conducted, the charge on punishment was presented, final arguments were made, and the jury deliberated, assessing punishment at fifty years' imprisonment. Following that, the trial court signed an order of conviction.

Had the trial judge granted the motion for instructed verdict, none of the remaining two days of trial would have taken place. An order for directed verdict concludes the case; the defendant—having been found not guilty—would have been discharged, the jury would have been dismissed, everyone would go home, a judgment of acquittal (not conviction) would have been entered. Instead, the Defendant was found guilty, punishment was determined, and he was sentenced immediately thereafter. Later, a judgment of conviction was signed by the trial court. During none of these proceedings did Towery's counsel intimate that the proceedings were improper based on an instructed verdict of acquittal. The record conclusively demonstrates that the judicial reasoning employed by the trial court was that the motion for instructed verdict was denied and all of the trial participants were aware of that ruling. The error in signing the wrong order was clerical. The first

18

notice that the order of acquittal had been signed was after the trial had concluded, the record had been prepared, and the conviction appealed. The nunc pro tunc order subsequently entered here (denying the motion for instructed verdict) did nothing more than "make the record speak the truth" regarding the judicial decision which was made during the trial.

This case is markedly different from those in which a change in a judgment cannot be reconciled with the actual facts that occurred at trial. In *Johnson v. State*, 233 S.W.3d 420 (Tex. App.—Fort Worth 2007, pet. ref'd), the defendant was found guilty of attempted murder but no mention was made at the plea hearing of a deadly weapon. On the original judgment of conviction, the word "none" was inserted concerning a deadly weapon finding. Some four and one-half years later, the trial court entered a nunc pro tunc judgment to include a finding of the use of a deadly weapon and found the original deadly weapon finding was originally "inadvertently omitted." *Id*. at 423. In reversing this finding, the court of appeals explained there was nothing in the record showing that a deadly weapon was part of the plea agreement; therefore, such a change was improper. *Id*. at 427. By contrast here, the sequence of events and proceedings following the presentation of the motion for instructed verdict compel us to conclude that the trial judge denied the motion.

4.    CONCLUSION

We hold that the order granting a directed verdict of acquittal dated June 27, 2007, was entered as the result of a clerical error, an error which was subsequently corrected nunc pro tunc.

Accordingly, we reject the Defendant's point of error concerning it.

## III.    POINTS OF ERROR TWO AND THREE:  DISMISSED JUROR COMMENT

The Defendant's second and third points of error concern a statement by a dismissed veniremember.  The Defendant asserts that he was denied the right to an impartial jury (because the jury had been tainted by the statement made by the unseated veniremember) under the Federal and Texas Constitutions.[9]

### A.    *Complained-of Statement*

The record indicates that after jury selection had been completed and the seating of the jury had taken place, the other prospective jurors were dismissed.  Before exiting the courtroom, one of the prospective and unselected jurors made the following comment:

[Dismissed Veniremember Richardson]:  May I make a statement?

THE COURT:  Yes, ma'am.

[Richardson]:  Regarding a statement I made?  I was making a statement.
This is just another example of an all-white jury with a black man on trial . . .

_____

[9]The Defendant expressly does *not* assert that the jury actually was racially biased, only that the statement, in challenging the jury's racial impartiality, would/could have resulted in that jury treating the Defendant more harshly.

20

THE COURT: Ma'am! Ma'am! Ladies and gentlemen, you will disregard the comments that were made by the juror. I must . . .

[Defense Counsel]: On behalf of the defendant, move for a mistrial.

THE COURT: That will be overruled. Ma'am, you may be excused.

The jury then took its oath, after which Judge Miller made some introductory remarks, including noting that he had already given one instruction and that there may be a necessity to give other instructions to the jury over the course of the trial. Judge Miller stated:

> I had extended the courtesy a moment ago that has been responded to in a way that was prejudicial in the very way it was presented. You are instructed that you shall disregard any comment that you heard out of the jury panel. That is not evidence in this case, nor is it to be considered for any purpose whatsoever.

### B. Preservation of Error

The State, citing one evidence-admissibility case for the general rule that error must be preserved, asserts that the Defendant failed to preserve error by not making an objection prior to moving for a mistrial. The Defendant asserts that the basis of the motion for mistrial was clear.

> The

> traditional and preferred procedure for a party to voice its complaint has been to seek them in sequence--that is, (1) to object when it is possible, (2) to request an instruction to disregard if the prejudicial event has occurred, and (3) to move for a mistrial if a party thinks an instruction to disregard was not sufficient.

*Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004). "However, this sequence is not essential to preserve complaints for appellate review. The essential requirement is a timely, specific request that the trial court refuses." *Id*. (footnotes omitted). "If an objectionable event occurs before a party

could reasonably have foreseen it, the omission of objection will not prevent appellate review." *Id.* at 70. Similarly, if an instruction to disregard could not be effective, "the only suitable remedy is a mistrial, and a motion for a mistrial is the only essential prerequisite to presenting the complaint on appeal." *Id.*

"In accordance with Rule 33.1, a motion for mistrial must be both timely and specific. A motion for mistrial is timely only if it is made as soon as the grounds for it become apparent." *Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007) (citations omitted).

In this case, the objectionable event could not have been reasonably foreseen; it was not, for example, reasonably foreseeable testimony in response to an improper question. Rather, it was an unsolicited outburst, foreseeable by no one. Moreover, the court obviously found it objectionable as it sua sponte instructed the panel to disregard the comment. Thus, the next sequential step, if the Defendant believed the outburst was not curable by the instruction to disregard, was to request the grant of a mistrial. The Defendant did this immediately; the request was timely. Moreover, the Defendant obtained an adverse ruling. As such, any error was preserved. *See* TEX. R. APP. P. 33.1.

### C. Scope and Standard of Review

The scope of review is whether the court erred in not granting a mistrial. *See, e.g., Young*, 137 S.W.3d at 70.

We review a court's denial of mistrial for abuse of discretion. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). A trial court abuses its discretion when its decision lies outside

22

the zone of reasonable disagreement. *Id.* "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Id.* (quoting *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)). In other words, we must determine whether the given instruction to disregard could not cure the prejudice from the excused juror's outburst.

### D. Analysis

The Defendant presents authority that a jury may be antagonized to be prejudiced against a defendant as a result of statements concerning alleged racial bias by the jury. *See Bell v. State*, 948 S.W.2d 535 (Tex. App.—Beaumont 1997, no pet.). But *Bell* is easily distinguishable in that: (1) the statements in *Bell* were made during the course of testimony at the punishment phase of trial and were challenged as irrelevant and hearsay under the Rules of Evidence, while here, the statement was not from the stand and does not involve evidentiary rulings; (2) the statements in *Bell* were made by the defendant's mother, while here, there is no indication of a connection or relation between the dismissed veniremember and the Defendant by which the jurors can as readily (though subconsciously) attribute the comments to the defendant; (3) the statements in *Bell* were numerous, and in response to repeated questioning by the State over defendant's overruled objections, while here, the statement was isolated and unsolicited; (4) since the statements in *Bell* were allowed over objection, they were not mitigated by an instruction to disregard, while the jury here was immediately instructed to disregard the statement; and (5) the statements in *Bell* were express

23

allegations of actual racial bias by the jury, while here, it was a more general, political statement, with, at most, an implication that this jury would be prejudiced.

On the other hand, in this more enlightened time, one might surmise that the comment by the excused juror could well have had the effect of focusing the jurors on the fact that the race of the Defendant should have nothing to do with his guilt or his innocence. Nothing in the record shows a detrimental impact on the jury panel.

The differences between the cases suggest that *Bell* is unpersuasive in finding error here. This case is more like that presented in *Young* and in *Singleton v. State*, No. 05-05-00687-CR, 2006 Tex. App. LEXIS 5318, at *2–3 (Tex. App.—Dallas June 22, 2006, no pet.) (not designed for publication). In both of those cases, isolated prejudicial comments by potential jurors (in both cases, not yet excused) were determined cured (or curable) by instruction to disregard so that denial of a mistrial was not error.

There was no abuse of discretion in the trial court's having denied the mistrial, such a decision falling within the zone of reasonable disagreement that the instruction to disregard could cure any prejudice from the dismissed juror's statement.

*E.      Conclusion*

We reject the Defendant's second and third points of error.

We affirm the judgment of the trial court.


                                        Bailey C. Moseley
                                        Justice


Date Submitted:      August 4, 2008
Date Decided:        September 4, 2008

Publish