

# IN THE
# TENTH COURT OF APPEALS

## No. 10-21-00312-CR

JUSTIN BRYAN TUCKER,

                    **Appellant**

 **v.**

THE STATE OF TEXAS,

                    **Appellee**

**From the 361st District Court
Brazos County, Texas
Trial Court No. 19-02932-CRF-361**

## MEMORANDUM OPINION

A jury found Appellant Justin Tucker guilty of the offenses of sexual assault and assault family violence by strangulation. *See generally* TEX. PENAL CODE ANN. §§ 22.01(b)(2)(B), 22.011(a)(1)(A). The jury then assessed Tucker's punishment at eight years' imprisonment for each offense. The trial court sentenced Tucker accordingly. This appeal ensued. We will affirm.

**Background**

Tucker and the complainant began dating in the summer of 2017 and, soon after, moved in together. The complainant subsequently became pregnant and, in May 2018, gave birth to their son. Shortly after the birth, Tucker and the complainant ended their relationship, and the complainant moved out of the residence with their child. But Tucker and the complainant continued to communicate with each other regularly.

The complainant testified that, on July 16, 2018, she agreed to return to the residence to pick up some of Tucker's laundry because she had taken the washer and dryer when she had moved out. The complainant explained that while she was at the residence, Tucker would also be able to see his son. The complainant testified that after she arrived at the residence, however, Tucker made sexual advances toward her. The complainant stated that she rebuffed the sexual advances. The complainant testified that Tucker then started to "strangle" her. The complainant explained that Tucker "had one hand around [her] throat and jaw and the other hand over [her] mouth and nose" such that she could not breathe. The complainant testified that Tucker then sexually assaulted her.

**Issue One**

In his first issue, Tucker contends that the trial court erred by excluding from evidence Defense Exhibit 12, a text-message exchange from early July 2017 between Tucker and the complainant, and Defense Exhibits 16 and 17, text-message exchanges from late October 2019 between Tucker and his then girlfriend, V.R. Tucker argues that

all three exhibits were admissible under Rule of Evidence 803(5) and that Defense Exhibit 12 was also admissible under article 38.371 of the Code of Criminal Procedure.

AUTHORITY

If the trial court's ruling merely offends a statute or the rules of evidence, the erroneous admission or exclusion of evidence is nonconstitutional error governed by Rule of Appellate Procedure 44.2(b). *Melgar v. State*, 236 S.W.3d 302, 308 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *see* TEX. R. APP. P. 44.2(b). Rule 44.2(b) provides that we must disregard nonconstitutional error unless the error affects substantial rights. TEX. R. APP. P. 44.2(b). In determining whether substantial rights were affected, "appellate courts must decide whether the error had a substantial or injurious effect on the jury verdict." *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). In conducting this harm analysis, we consider the record as a whole. *Id.*

DISCUSSION

Defense Exhibit 12 reflects a text-message exchange from early July 2017 between Tucker and the complainant in which the complainant stated that she wanted to have a child, and Tucker stated that he was ready to have a child as well. The trial court excluded the exhibit from evidence, but the following exchange took place between defense counsel and the complainant about Defense Exhibit 12 during defense counsel's cross-examination of the complainant:

> Q.     . . . I'm going to show you what I've marked as Defendant's Exhibit 12. If you can, look through this and just tell me if you recognize it.
>
> A.     Yes, it was conversations that we had had.

Q.     You mean you and [Tucker]?

A.     Yes.

Q.     Does that refresh your memory about conversations that you-all had about kids?

A.     Sure.  It said that, yes, I did want a kid, but in here it doesn't state that I want to have one right now.  I said I could get [my IUD] taken out after a few months.  There's no timeline on that.

Q.     If we look on the front page, does that say July 3, 2017?

A.     Yes.

. . . .

Q.     . . . Does this at least refresh your memory about the conversation?

A.     Yes.

Q.     Prior to me showing this to you, were you unable to remember all of the specific dates and times and so forth in your communications?

A.     Yes.  If it has the time stamp on it, then, yes.

Q.     But does this refresh your memory that you in fact expressed on July 3 of '17 that you wanted a baby now?

A.     I said I was tempted to.

Q.     That's not what you said, is it?

A.     It literally says, I was tempted to.

Q.     Well, if you go to the last page, did you indicate on July 4, 2017 at 11:29 a.m. that you were serious about having a kid right now?

A.     Yes.  Actually that's his message.  His message states that and then I said yes.  So I guess, yes.

Therefore, while Defense Exhibit 12 was excluded from evidence, the substance of the exhibit was admitted into evidence.

Defense Exhibits 16 and 17 reflect text-message exchanges from late October 2019 between Tucker and his then girlfriend, V.R. In Defense Exhibit 16, V.R. sent Tucker several pictures of his and the complainant's child and told Tucker not to tell anyone that she had sent the pictures to him. Tucker replied to V.R. by thanking her for sending the pictures. In Defense Exhibit 17, Tucker informed V.R. that he was at the hospital where his mother had taken him because of a dental problem. Tucker and V.R. then continued to exchange text messages as Tucker left the hospital with his mother and picked up his medicine. The trial court excluded these exhibits from evidence, but the following exchange occurred between defense counsel and V.R. about Defense Exhibits 16 and 17 during defense counsel's cross-examination of V.R.:

> Q.     . . . I'm going to show you what I've marked as Exhibit 16. Could you thumb through that please and tell me if you recognize it?
>
> A.     These are messages between me and [Tucker].
>
> Q.     That was between you and [Tucker]; is that correct?
>
> A.     Yes, I believe so.
>
> Q.     Is that an accurate representation of that conversation during that window in time?
>
> A.     I don't even remember everything. It was so long ago. I remember there was pictures being sent.
>
> Q.     You actually sent him some pictures in that exchange, correct?
>
> A.     Yes, sir.

Q.      Please take a look at No. 17.  Does that also appear to be an exchange between you and [Tucker]?

A.      Okay.

Q.      Is that another exchange between you and him?

A.      I'm not sure what the conversation was about other than what it says.

. . . .

Q.      . . . October 23, 2019, does this refresh your memory of a text conversation you had with [Tucker]?

A.      I'm going to be completely honest, I do not remember this whole conversation.  That's why I read the whole thing because I don't remember.  I'm guessing he was sick.

Q.      But you remember you-all exchanging and going back and forth?

A.      We would text, yeah.

Q.      And then this one here, this one was actually  - -  in that one you were actually sending him pictures of his son . . . ?

A.      Yes, sir.

Q.      Did he appear to be very grateful for you sending those to him?

A.      I think I had sent him pictures.  It was more of me just feeling bad and him telling me that he wasn't allowed to see his kid.  I don't think - -  I mean - -

Q.      I'm directing your attention  - -  without reading it and just to refresh your memory.

A.      Okay.

Q.      I mean, was he  - -

A. He sounded very grateful over text, yes.

Q. Extremely?

A. Yes.

Q. Was he very moved by that?

A. I have no idea.

Q. Well, did he indicate that he was very moved by that?

A. In the text.

Q. You didn't want anyone to know that you had sent him the pictures of his own son, correct?

A. Correct.

Therefore, as with Defense Exhibit 12, while Defense Exhibits 16 and 17 were excluded from evidence, the relevant substance of the exhibits was admitted into evidence.

Because the relevant substance of Defense Exhibits 12, 16, and 17 was admitted into evidence, any error in excluding the exhibits themselves did not affect Tucker's substantial rights. *See Merrick v. State*, 567 S.W.3d 359, 376 (Tex. App.—Fort Worth 2018, pet. ref'd) (citing *Womble v. State*, 618 S.W.2d 59, 62 (Tex. Crim. App. [Panel Op.] 1981) ("This court has consistently held reversal is not required by exclusion of evidence where the same testimony was later admitted without objection."), and *Owens v. State*, No. 05-12-01201-CR, 2014 WL 2568483, at *8 (Tex. App.—Dallas June 9, 2014, no pet.) (not designated for publication) ("[E]rror in the admission or exclusion of evidence does not affect substantial rights and is harmless if the evidence is cumulative of other evidence admitted to prove the same fact.")). Accordingly, we conclude that even if the trial court

erred in excluding Defense Exhibits 12, 16, and 17, such error was harmless. *See* TEX. R. APP. P. 44.2(b); *Morales*, 32 S.W.3d at 867. Tucker's first issue is overruled.

**Issue Two**

In his second issue, Tucker contends that the trial court erred in excluding certain video and photographic evidence under Rule of Evidence 412. In the substance of his briefing of this issue, Tucker appears to also argue that the evidence should have been admitted under article 38.371 of the Code of Criminal Procedure.

During trial, Tucker presented to the trial court, outside the presence of the jury, video and photographic evidence that purportedly showed consensual sexual activity between Tucker and the complainant. Defense counsel described the video evidence specifically as a video of about four-and-one-half minutes' duration that Tucker and the complainant "made of themselves wherein [the complainant] is clearly the aggressor in the sexual act." Tucker argued that the video and photographic evidence was admissible under Rule of Evidence 412(b) to show consent and motive. Tucker also argued that the evidence was admissible under article 38.371 of the Code of Criminal Procedure to show the nature of the relationship between Tucker and the complainant. Defense counsel stated:

> [The complainant] has testified in such a way like she's a docile fawn, just a tender lamb who has just been bullied by and controlled by this man, my client, and has basically submitted with everything that he's gone along with, when in fact she is quite aggressive in her sexual pursuit of my client.

The State responded by objecting to the admission of the evidence under Rule of Evidence 403. The trial court sustained the State's objection. The trial court further stated

that it would include the video and photographic evidence in a sealed bill of exception; however, no formal bill of exception was ever filed and included in the appellate record.

Tucker later presented to the trial court, outside the presence of the jury, two specific photographs of the complainant's breasts and argued that such evidence was admissible to rebut the complainant's testimony that there had been no consensual sexual conduct between Tucker and the complainant after they had ended their relationship in May 2018. The State responded that it agreed that the photographs would be admissible if the complainant denied sending the photographs but that it would otherwise again object to the admission of the photographs under Rule of Evidence 403. The trial court stated that the photographs would be admissible if the complainant denied sending them. The complainant subsequently acknowledged the content and the dates of the photographs in her testimony before the jury; therefore, the photographs themselves were excluded from evidence.

The State initially argues that Tucker failed to preserve his second issue for appellate review. We assume without deciding that this issue has been preserved for review.

AUTHORITY

A trial court's ruling to admit or exclude evidence is reviewed under an abuse-of-discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). "The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement." *Id.* The trial court's ruling will not be disturbed as long as the

ruling is correct on any theory of law applicable to the ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

Rule of Evidence 412 creates "an extremely high hurdle" for the admissibility of evidence of specific instances of an alleged victim's past sexual behavior. *Todd v. State*, 242 S.W.3d 126, 129 (Tex. App.—Texarkana 2007, pet. ref'd). Rule 412 provides in relevant part:

> **(a) In General.** The following evidence is not admissible in a prosecution for sexual assault, aggravated sexual assault, or attempt to commit sexual assault or aggravated sexual assault:
>
>> **(1)** reputation or opinion evidence of a victim's past sexual behavior; or
>>
>> **(2)** specific instances of a victim's past sexual behavior.
>
> **(b) Exceptions for Specific Instances.** Evidence of specific instances of a victim's past sexual behavior is admissible if:
>
> . . . .
>
>> **(2)** the evidence:
>>
>>> **(A)** is necessary to rebut or explain scientific or medical evidence offered by the prosecutor;
>>>
>>> **(B)** concerns past sexual behavior with the defendant and is offered by the defendant to prove consent;
>>>
>>> **(C)** relates to the victim's motive or bias;
>>>
>>> **(D)** is admissible under Rule 609; or
>>>
>>> **(E)** is constitutionally required to be admitted; and
>>
>> **(3)** the probative value of the evidence outweighs the danger of unfair prejudice.

Tex. R. Evid. 412.

Under article 38.371 of the Code of Criminal Procedure, when the defendant's and the alleged victim's relationship is a "dating relationship,"[1] "each party may offer testimony or other evidence of all relevant facts and circumstances that would assist the trier of fact in determining whether the actor committed the offense . . ., including testimony or evidence regarding the nature of the relationship between the actor and the alleged victim." TEX. CODE CRIM. PROC. ANN. art. 38.371(a)–(b). The statute specifically provides, however, that it "does not permit the presentation of character evidence that would otherwise be inadmissible under the Texas Rules of Evidence or other applicable law." *Id.* art. 38.371(c).

Rule of Evidence 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. Although the Rules of Evidence are intentionally slanted toward the inclusion of all relevant evidence, Rule 403 gives the trial court considerable discretion to exclude evidence when it appears to the individual judge, in the context of that particular trial, to be insufficiently probative when measured against the countervailing factors specified in the rule. *Winegarner v. State*, 235 S.W.3d 787, 791 (Tex. Crim. App. 2007).

When conducting a Rule 403 balancing test, courts should consider: (1) the evidence's probative force; (2) the proponent's need for the evidence; (3) the evidence's

---

[1] A "dating relationship" is defined as "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature." TEX. FAM. CODE ANN. § 72.0021(b).

potential to suggest a decision on an improper basis; (4) the evidence's tendency to distract the jury from the main issues; (5) any tendency for the jury to give the evidence undue weight because it has not been fully equipped to evaluate the evidence's probative force; and (6) the likelihood that presenting the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *See Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

DISCUSSION

Tucker argues that the trial court erred in excluding the video and photographic evidence because he was entitled to present evidence showing the true nature of the complainant's relationship with him, her motive, and her consent. Tucker argues that, without such evidence, the jury heard only the complainant's story of the relationship, in which she was portrayed "as a poor, innocent, victim who was an unwilling yet submissive participant in [his] sexual aggression, and who was brutally attacked by [him]." We conclude, however, that the trial court did not abuse its discretion in excluding the video and photographic evidence under Rule 403.

We disagree with Tucker's characterization of the complainant's testimony about the nature of her and Tucker's sexual relationship. The complainant testified extensively on the subject. The complainant stated that when she and Tucker were living together, they had sexual relations almost every day. She said that Tucker was the one who almost always initiated their sexual activity, and when asked by defense counsel if she was "just going along, yielding," or "just agreeing to make [Tucker] happy," she replied that she was. However, she also acknowledged in her testimony that she sometimes initiated the

sexual activity with Tucker. The complainant further testified that she sent Tucker many nude photographs of herself. When defense counsel then asked if there were times that she filmed herself having sexual relations with Tucker, the complainant initially stated that there were times when Tucker filmed her but that she did not want to be filmed. But the following exchange between defense counsel and the complainant then occurred:

Q. So do you know about how many times you-all recorded yourselves? Well, let me ask you this. Were there times when you recorded you and him having sex?

A. If there's recordings, then, yes. I don't - - I don't understand.

Q. Well, I'm just asking if you actually - -

A. There are recordings, yes.

Additionally, when asked by defense counsel if she and Tucker "did some other stuff that some folks don't necessarily do," the complainant answered, "Okay, yes." The complainant even acknowledged that "strangulation" was a part of their consensual sexual activity on a few occasions, and when asked whose idea it was, she replied, "It was a mutual agreement."

Considering the admissions in the complainant's testimony, we believe that the trial court could have reasonably concluded that the defense had little need to present the actual video and photographic evidence of the consensual sexual activity between Tucker and the complainant and that the presentation of such evidence merely had the potential to suggest a decision on an improper basis and had the tendency to distract the jury from the main issues. We therefore conclude that the trial court did not abuse its

discretion in excluding the video and photographic evidence under Rule 403. *See* TEX. R. EVID. 403; *Gigliobianco*, 210 S.W.3d at 641–42. We overrule Tucker's second issue.

### Issue Three

In his third issue, Tucker contends that the trial court erred in admitting extraneous-offense evidence through the testimony of V.R.

AUTHORITY

As stated above, a trial court's ruling to admit or exclude evidence is reviewed under an abuse-of-discretion standard. *Martinez*, 327 S.W.3d at 736.

Rule of Evidence 404(b) precludes the admission of evidence of a crime, wrong, or other act to prove a person's character in order to show that the person acted in conformity with that character on a particular occasion, but the rule allows for such evidence to be admitted for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b). The listed purposes "are neither mutually exclusive nor collectively exhaustive." *De La Paz*, 279 S.W.3d at 343. Therefore, although Rule 404(b) limits character evidence, it is a rule of inclusion. *Id.* "The rule excludes only that evidence that is offered (or will be used) solely for the purpose of proving bad character and hence conduct in conformity with that bad character." *Id.*

Rule of Evidence 403, as stated above, provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. When conducting a

Rule 403 balancing test, courts should consider: (1) the evidence's probative force; (2) the proponent's need for the evidence; (3) the evidence's potential to suggest a decision on an improper basis; (4) the evidence's tendency to distract the jury from the main issues; (5) any tendency for the jury to give the evidence undue weight because it has not been fully equipped to evaluate the evidence's probative force; and (6) the likelihood that presenting the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *See Gigliobianco*, 210 S.W.3d at 641–42.

DISCUSSION

V.R. testified as follows: She began dating Tucker around April 2019. She did not initially believe the complainant's allegations against Tucker but began believing them when Tucker also "strangled" her at the end of their four-month relationship. The incident occurred after she and Tucker had been arguing. Tucker came into the bathroom while she was using it and picked her up by her neck. Tucker dragged her into another room by her neck, threw her on the ground, and hit her on the side of her head such that she "almost got knocked out." When she then opened her eyes, Tucker was "just sitting over [her] staring at [her]."

Tucker initially argues that this extraneous-offense evidence was admitted in violation of Rule 404(b) because it was elicited to prove his character to show that on a particular occasion, he acted in accordance with that character. The State responds that the extraneous-offense evidence was properly admitted to rebut Tucker's defensive theory that the complainant fabricated the allegations of the charged offenses.

Rebuttal of a defensive theory is one of the permissible purposes for which extraneous-offense evidence may be admitted. *See Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003). More specifically, the State may present extraneous-offense evidence to rebut a defensive theory of fabrication. *See Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008). To be admissible for rebuttal of a fabrication defense, "the extraneous misconduct must be at least similar to the charged one." *Newton v. State*, 301 S.W.3d 315, 317 (Tex. App.—Waco 2009, pet. ref'd) (quoting *Wheeler v. State*, 67 S.W.3d 879, 887 n.22 (Tex. Crim. App. 2002)). But the requisite degree of similarity is not that of exacting similarity. *Dennis v. State*, 178 S.W.3d 172, 178–79 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd); *see Newton*, 301 S.W.3d at 318 ("Although some similarity is required, the requisite degree of similarity is not as exacting as necessary when extraneous-offense evidence is offered to prove identity by showing the defendants 'system' or *modus operandi*.").

Here, immediately after the State made its opening statement, the defense made its opening statement, which included the following:

> But what happened was, . . . [the complainant's] family becomes unhappy. They want somebody of a higher caliber apparently than [Tucker]. . . .
>
> So [the complainant] devises a plan. They do have a son . . . on May 10 of 2018 and they're still together and they're still doing sexual stuff together. It's not like they became distant shortly after that. But she starts working on this plan and then all of a sudden on July 16 - - July 16 she decides, oh, I've got the DNA now. It's in me. So what she does is she calls the police and she forms this plan and the plan is to get [Tucker] out of their lives. . . .
>
> . . . .

. . . You're going to find that she was very calm in her demeanor and she had indicated that she wants to get full custody of her son and you're going to find there's evidence that in fact this was part of her plan. . . .

. . . .

. . . So this is all part of her plan to get [Tucker] out of their lives. . . .

. . . You will find that this is part of a plan and after she makes this call, all of a sudden [Tucker] is getting called, like, what, what?

He's baffled that all of a sudden now the police are interested in talking to him. Then five days later -- there were some communications after that, but about five days later, July 21, 2018, she ghosts him and he's like just gone, not in her life anymore and not in [their son's] life. So this has all been part of her plan.

Before V.R. testified, the defense then called Officer Blaine Schafer as a witness. Officer Schafer testified that on July 16, 2018, he was employed by the College Station Police Department and responded to the complainant's phone call regarding the alleged assault. Officer Schafer accompanied the complainant to the hospital and waited there with her. When asked by the defense if he observed anything odd or suspicious during that time, Officer Schafer replied that there was one statement. Officer Schafer testified that the complainant made a specific comment about trying to obtain full custody of her child and then asked him if this incident would help her in receiving full custody of her child.

Considering the foregoing, we conclude that the defense opened the door to the admission of V.R.'s extraneous-offense evidence to rebut the defensive theory of fabrication presented in the defense's opening statement and Officer Schafer's testimony. *See Bass*, 270 S.W.3d at 563. We further conclude that the alleged extraneous offense is

sufficiently similar to the charged offenses. *See Newton*, 301 S.W.3d at 317. In both instances, a woman with whom Tucker had an intimate relationship alleged that he followed her into the bathroom and then "strangled" her.

Tucker argues that V.R.'s extraneous-offense evidence was nevertheless irrelevant because it postdated the charged offenses. But the admissibility of extraneous offenses under Rule 404(b) is not limited to those occurring before the charged offenses. *Hegar v. State*, 11 S.W.3d 290, 297 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *see* TEX. R. EVID. 404(b).

Tucker next contends that V.R.'s extraneous-offense evidence was admitted in violation of Rule 403.

Tucker first argues that his alleged actions in 2019 have no probative value as to his alleged actions in 2018. However, we have already concluded that even though the alleged extraneous offense occurred after the charged offenses, the extraneous-offense evidence was probative to rebut Tucker's defensive theory of fabrication.

Tucker also argues that there was no need for the extraneous-offense evidence because it was merely cumulative of other evidence. But the State's case relied predominantly on the testimony of the complainant because only the complainant, Tucker, and their infant son were eyewitnesses to what occurred in the residence on July 16, 2018. The State therefore needed the extraneous-offense evidence to rebut the defense's theory that the complainant fabricated the allegations against Tucker to obtain full custody of their child.

Extraneous-offense evidence does have some tendency to suggest a decision on an improper basis. However, this danger of unfair prejudice was counterbalanced, to some degree, by the trial court's limiting instruction contained in the court's charge. *See Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998) ("We generally presume the jury follows the trial court's instructions in the manner presented."). Additionally, the presentation of the extraneous-offense testimony did not consume an inordinate amount of time.

Rule 403 "envisions exclusion of [relevant] evidence only when there is a 'clear disparity between the degree of prejudice of the offered evidence and its probative value.'" *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001), and *Joiner v. State*, 825 S.W.2d 701, 708 (Tex. Crim. App. 1992)). We cannot say here that there is a "clear disparity" between the danger of unfair prejudice posed by the extraneous-offense evidence and its probative value.

For these reasons, we hold that the trial court did not abuse its discretion in admitting the extraneous-offense evidence. We overrule Tucker's third issue.

## Conclusion

Having overruled each of Tucker's issues, we affirm the trial court's judgment.


MATT JOHNSON
Justice

Before Chief Justice Gray,
      Justice Johnson, and
      Justice Rose[2]
Affirmed
Opinion delivered and filed August 29, 2024
Do not publish
[CR25]



---

[2] The Honorable Jeff Rose, Senior Chief Justice (Retired) of the Third Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. §§ 74.003, 75.002, 75.003.